**In re William Ronald ZIEGLER, Dorothy Mable Ziegler, Debtors.**

**Bankruptcy No. 88 B 08161.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 23, 1992.

Howard A. Joelson, Chicago Heights, Ill., for debtors, William Ronald Ziegler and Dorothy Mable Ziegler.

Craig Phelps, Chicago, Ill., Chapter 13 Standing Trustee.

Samuel T. Miller, Komyatte & Freeland, P.C., Highland, Ind., for Hammond Radiologist, Hammond Clinic, Richard P. Komyatte, Daniel L. Freeland, Mary Jane Green and Donna J. Sharp.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on a motion filed by William Ronald Ziegler and Dorothy Mable Ziegler (the "Debtors"), for sanctions, costs, attorneys' fees and punitive damages for an alleged violation of 11 U.S.C. § 362(c)(2)(A), against Hammond Clinic, Hammond Radiologists, and their attorneys Richard P. Komyatte, Daniel L. Freeland, Mary Jane Green, and Donna J. Sharp, a paralegal, (collectively the "Respondents"). For the reasons set forth herein, the Court having considered all the pleadings and exhibits filed, does hereby deny the motion.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(a) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

The Debtors filed a voluntary Chapter 13 petition on May 24, 1988. Their plan provided for payment in full of all allowed

administrative and secured claims, and proposed to pay twenty-eight percent of allowed unsecured claims through payments to the Chapter 13 Trustee at the rate of $45.00 per week for thirty-six months. The plan further provided that title to the property of the bankruptcy estate would revest in the Debtors upon confirmation of the plan. Respondent Hammond Clinic was scheduled as a pre-petition creditor holding an undisputed unsecured claim for medical services in the amount of $168.00. The Debtors made no provisions in the plan to deal with post-petition claims as potentially contemplated by 11 U.S.C. §§ 1322(b)(6) and 1305(a)(2). The plan was confirmed on August 2, 1988.

Debtor William Ronald Ziegler and a dependent child subsequently incurred post-confirmation medical expenses during 1989 and 1990 for which the total remaining sum of $695.00 is owing and unpaid to Respondents Hammond Clinic and Hammond Radiologists. Represented by the other Respondents, they filed a collection suit in the Hammond city court in Indiana, in June, 1991, and obtained a default judgment against William Ronald Ziegler on August 21, 1991. Subsequent wage garnishment proceedings were commenced to enforce the judgment. Such actions prompted the objection of the Debtors' attorney, correspondence between the parties' respective attorneys, and resulted in the filing of the instant motion on October 23, 1991.

The Debtors allege that the actions of the Respondents violate the automatic stay of section 362(c)(2)(A) and the wage garnishment supplemental proceedings jeopardize the completion of the plan. They further assert that the claims of the Respondent medical providers should be disallowed pursuant to 11 U.S.C. § 1305(c).

The Respondents defend by arguing that the automatic stay provisions of section 362(a) do not apply to prevent collection actions to recover post-petition debt from the Debtors or their property. They also contend that section 1305 is not applicable because the Respondents did not file any claims in this case. They further argue that 11 U.S.C. § 1327(b) effected a revesting of all property of the estate back to the Debtors upon confirmation of the plan in accordance with its terms. Thus, the collection actions taken with respect to the post-confirmation new debt did not violate the stay as to estate property. The Respondents note that the wage garnishment proceedings were conducted only after determining that same would not interfere with plan payments to the Trustee and that the Debtors were in default in those payments from March through August, 1991.

Trial was set for December 11, 1991. The parties, however, waived evidentiary hearing and rested on the pleadings, affidavits, and other documents filed. The Court then took the matter under advisement.

## III. DISCUSSION

Section 362(c)(2)(A) provides in relevant part that the stay of any other act under section 362(a), except as to former property of the estate that is no longer property of the estate, continues until the time the case is closed. This is the sole section invoked and relied upon by the Debtors. It applies because the case is still open, has not been dismissed, notwithstanding the default in payments to the Trustee, and the Debtors have not received a discharge. Although not cited by the Debtors, section 362(h) contains the statutory basis for the precise relief sought.

Section 362(h) provides a remedy for aggrieved natural persons to receive awards of their actual damages, including costs and attorneys' fees, and where appropriate, punitive damages when they have suffered a willful violation of the automatic stay. *In re Prairie Trunk Railway*, 125 B.R. 217, 220 (Bankr.N.D.Ill.1991). Willful is defined as a "deliberate and intentional act done with the knowledge that the act is in violation of the stay." *In re Forty–Eight Insulations, Inc.*, 54 B.R. 905, 909 (Bankr. N.D.Ill.1985); *see also In re Allen*, 83 B.R. 678, 681 (Bankr.E.D.Mo.1988); *In re Wagner*, 74 B.R. 898, 903 (Bankr.E.D.Pa.1987).

The Debtors principally rely on the recent decision *In re Price*, 130 B.R. 259 (N.D.Ill.1991) affirming this Court's earlier opinion in *In re Price*, 103 B.R. 989 (Bankr.

N.D.Ill.1989). The holdings in both *Price* opinions are inapposite because they dealt with the sovereign immunity issues raised under 11 U.S.C. § 106. *Price* involved an admitted stay violation by the Internal Revenue Service to collect on a pre-petition claim, unlike the instant case solely concerned with the collection actions on post-petition claims. Both *Price* opinions, however, contain instructive *dicta.* In particular, the Court agrees with Judge Rovner's view that the better approach is taken by the line of cases taking the position that any property necessary to implementation of the Chapter 13 plan remains property of the estate after the plan is confirmed. 130 B.R. at 269; *e.g., In re Clark,* 71 B.R. 747, 750 (Bankr.E.D.Pa.1987); *In re Aneiro,* 72 B.R. 424, 429–430 (Bankr.S.D.Cal.1987); *In re Root,* 61 B.R. 984, 985 (Bankr.D.Colo. 1986); *In re Adams,* 12 B.R. 540, 542 (Bankr.D.Utah 1981). Particularly significant is Judge Rovner's statement, with which the Court agrees:

> "there is no firm line which divides the property of the debtor and property of the estate once a Chapter 13 plan has been confirmed. Rather, the two must be treated as one and the same, *at least to the extent that the debtor's post-confirmation income or other property is committed to implementation of the plan.*"

130 B.R. at 269 (emphasis added). It is the precise limits of such extent that need to be determined here.

 The Debtors apparently contend that all their post-petition confirmation earnings are property of the estate under 11 U.S.C. § 1306(a) and thus, completely insulated under section 362(a)(3) and (a)(4) from collection actions by post-confirmation creditors. The Court disagrees with this proposition and concludes that only that portion of post-confirmation income from services needed to fund the plan becomes property of the estate and protected by the automatic stay. The balance of such post-confirmation income or other property acquired by the Debtors not needed to fund a plan, is the Debtors' individual property and not insulated from post-petition claims nor protected by section 362(a)(3) or (a)(4).

 The Respondents correctly note that the stay of section 362(a) protects the Debtors, property of the Debtors, and property of the estate. Moreover, they properly respond that section 1305 is inapplicable because none of the Respondents have filed any proofs of claim in the case. The Respondents also correctly argue that none of the subsections of section 362(a) insulate the Debtors from collection action regarding post-petition and post-confirmation new debt incurred for which satisfaction is sought from either the Debtors individually or their separate property, as distinguished from property of the estate. The principal case authorities upon which they rely are: *In re Petruccelli,* 113 B.R. 5 (Bankr. S.D.Cal.1990); *In re Walker,* 84 B.R. 888 (Bankr.D.Col.1988); *In re Johnson,* 51 B.R. 439 (Bankr.E.D.Pa.1985); and *In re Mason,* 45 B.R. 498 (Bankr.D.Ore.1984), *aff'd,* 51 B.R. 548 (D.Ore.1985). They also cite Judge Barliant's opinion in *In re Osei,* 90 B.R. 910 (Bankr.N.D.Ill.1988) which favorably cited *Mason* and referenced *In re Clark,* 71 B.R. 747 (Bankr.E.D.Pa.1987). *See also In re Lambright,* 125 B.R. 733 (Bankr.N.D.Tex.1991).

As discussed in some of those decisions, subsections 362(a)(1), (2), (5), (6) and (7) pertain to stays of actions relating only to pre-petition claims. Both the Debtors and the Respondents also correctly observe that the provisions of section 362(a)(3) and (a)(4) are not restricted to pre-petition claims. However, same stay only actions against property of the estate and do not bar actions against the Debtors or property of the Debtors to recover post-petition claims. The interaction of section 362 and its effect on post-petition and post-confirmation claim holders is anything but clear. *See* II Lundin, *Chapter 13 Bankruptcy,* § 6.26 (1990) (collecting cases). Respondents conclude that by operation of section 1327(b) and the terms of the Debtors' confirmed plan, there is no property of the estate left against which they have proceeded to collect the post-confirmation claims. Accordingly, they have committed no violation of the automatic stay pursuant to section 362(c)(2)(A). Respondents con-

tend their position is supported by the majority of reported decisions.

The Respondents additionally note the minority position espoused by *In re Aneiro*, 72 B.R. 424 (Bankr.S.D.Cal.1987) which views the bankruptcy estate as continuing until the case is closed, notwithstanding the property revesting provisions of section 1327(b). In addition, the Respondents argue the analogous provision of 11 U.S.C. § 1141(b) and the revesting which occurs in confirmed Chapter 11 reorganizations. They also conclude that there was no estate property left at the time of their actions because of the revesting under the confirmed plan in light of section 1327(b). The Respondents do concede, however, that the stay still applies to protect plan payments required of the Debtors, but that they have not proceeded and would not proceed against same.

■ The Court agrees with most of the arguments raised by the Respondents and some of the approaches and results reached in the cited cases. The Court, however, disagrees with one conclusion implied by the Respondents and some of the cited decisions like *Mason* that there is no bankruptcy estate which survives confirmation in the typical Chapter 13 case where the plan, as here, provides for revesting of property of the estate in the Debtors upon confirmation. Only defined property of the estate then extant can so revest. The Court concludes that future statutorily defined property of the estate under section 1306(a), as needed to fund the plan, survives confirmation and becomes property of the estate when it comes into being, notwithstanding section 1327(b). To such extent, the Court shares the view in *Aneiro* that an estate exists post-confirmation in Chapter 13, notwithstanding the revesting provisions of section 1327(b). In this fashion, the Court will answer the question rhetorically posed, but not answered in *In re Littke*, 105 B.R. 905, 909 (Bankr. N.D.Ind.1989). Such future acquired property includes post-confirmation earnings from services performed by the Debtors needed to fund the plan which are included within the statutory definition of property of the estate referenced in section 1306(a)(2). As noted in *Osei* and *Petruccelli*, there is a seeming conflict between sections 1327(b) and 1306(a)(2) in their application to collection of post-petition debts.

■ The Court is of the opinion that such conflict is only facial, and that the two sections can be harmoniously construed when applied to the facts of this matter in accord with the longstanding canon of statutory construction. Where two statutes deal with the same subject matter, they are to be read in *pari materia* and harmonized when possible. *In re Johnson*, 787 F.2d 1179, 1181 (7th Cir.1986); *In re Robinson*, 665 F.2d 166, 171 (7th Cir.1981). Chapter 13 should not be read in a manner that would render a provision superfluous or insignificant. *See Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 970–971 (5th Cir.1981).

■ The term "vest" is undefined in the Bankruptcy Code. Black's Law Dictionary defines the term to include: "an immediate, fixed right of present or future enjoyment; ... to take effect; ... to clothe with possession; to deliver full possession of land or of an estate...." *Black's Law Dictionary* (6th ed. 1990). Same is not dispositive. Rather, it is indicative of a temporal event, usually concerning present possession of something. For purposes of alleged stay violations, however, niceties of property law and conveyancing technicalities are not the proper focus of inquiry. The relevant query is whether the actions taken were a proscribed attempt to collect on a claim from a person or *res* protected by section 362(a). On the one hand, if there never is any property of the Chapter 13 estate after confirmation, then what is there for the trustee to collect from the debtor, either directly or otherwise, and then disburse to and for the benefit of the creditors under the confirmed plan? Trustees normally only administer property of the trust estate with which they are entrusted. On the other hand, if they do not receive and disburse property of the bankruptcy estate in trust, why are they needed or called trustees? After all, section 1322(a)(1) contem-

plates someone to exercise supervision and control over such property, and who better than the Chapter 13 trustee with regard to property of the estate. It is more logical to conclude that the payments made by or on behalf of the Debtors needed to fund the plan and received or to be received by the Trustee are property of the estate. The remaining wages of the Debtor William Ronald Ziegler remain his individual property. This result is in accord with the view in *Root* and *Clark.*

The Court respectfully disagrees with the position taken in *Mason* and its progeny that all property of the estate vests in the debtor upon confirmation and thereafter no estate subsequently exists. In this Court's view, vesting, like confirmation, is a temporal event which occurs once in a case and does not preclude the coming into existence of property of the bankruptcy estate *in futuro.* It unduly strains logic to conclude that each time a debtor receives future earnings from services rendered, all of same "revests" over and over again in the debtor, thus never becoming a part of the estate to the extent needed to fund the plan, and all of same therefore insulated by the automatic stay. No such repeated revesting provisions covering future earnings are expressly contained in the instant plan and the Court will not infer same in the absence of any language to such effect. Rather, this plan's single reference to vesting upon confirmation displays a seeming intent for such event to occur only once—at confirmation.

It is also illogical to contend that a one-time revesting of all future earnings occurs at confirmation because same are not extant and were not then *in esse* to revest in anyone. Rather, it is more logical to conclude that those earnings from a debtor's services created post-confirmation needed or committed to fund the confirmed plan, become property of the estate when they come into being to be later paid to the trustee, and are protected by the stay of section 362(a)(3) and (a)(4) against post-petition claims. The remainder of the earnings are more properly characterized as the debtor's property and not automatically protected by the automatic stay from post-petition claims. To hold otherwise could have the unfair and inequitable polar results in a plan such as this to either fully insulate such future acquired interests in property from legitimate post-petition claims not provided for in the plan, or allow post-confirmation claimants to proceed against the funds or property needed to consummate the plan for the benefit of the Debtors' other pre-petition creditors. The result of the Court's construction providing a middle rather than an all or nothing approach, is consistent with its earlier discussion in *Price,* Judge Rovner's cited *dictum,* and is buttressed by section 1322(a)(1). That section requires that the plan must "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). Construed in this fashion, the seeming conflict between sections 1327(b) and 1306(a)(2) is resolved. This construction also follows the canon of statutory construction that where possible, two statutes must be read so as to give meaning to each statute. *See Laughlin v. United States IRS,* 98 B.R. 494, 496 (D.Neb.1989).

■ Remedial legislative drafting would more appropriately solve the conundrum over which all of the above authorities have labored so long with varying results. The Court's construction of the relevant statutory sections is imperfect at best, but finds support in the text of the Code which is less than crystal clear in this area. The Court opines that its analysis and result is preferable to one which requires a holding that one section controls over the other. On the facts of this matter it is clear that the Respondents took no action to disrupt plan payments which were made, or should have been made, to the Trustee, or to collect on a pre-petition claim. Accordingly, they have not willfully violated section 362 and the motion is denied. No actual damages have been proven and thus,

no award of fees, sanctions, or punitive relief is appropriate.

### IV. CONCLUSION

The Debtors have not proven any willful violation of the automatic stay by the Respondents' post-petition actions. Thus, no relief under section 362(h) is appropriate and the motion is hereby denied.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.