**In re Alfreda Epps LEAVELL, Debtor.**

**Bankruptcy No. 94–25673.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Nov. 28, 1995.

---

Robin L. Tolerton, Norfolk, VA, for debt-or.

David R. Levin, Trustee, Portsmouth, VA.

## MEMORANDUM OPINION & ORDER

STEPHEN C. ST. JOHN, Bankruptcy Judge.

This case is before the court on the motion of the debtor, Alfreda Epps Leavell, for a finding of contempt and imposition of sanctions against Littmans, Inc., ("Littmans") and its counsel, W. Wayne Tiffany ("Tiffany"). After reviewing the evidence and arguments of counsel, we make the following determinations.

## FINDINGS OF FACT

The debtor filed the instant Chapter 13 case on December 8, 1994. Six days later, she purchased a ring and a video cassette recorder from Littmans. The debtor did not disclose her bankruptcy status when she purchased these items. After the debtor failed to pay for these items, Littmans, through Tiffany, obtained a judgment against her on

July 19, 1995 and began to garnish her post-petition earnings. Upon learning of the garnishment, counsel for the debtor notified Tiffany of the pending Chapter 13 case but her request to dismiss the garnishment was refused. Thereafter, the debtor filed this motion for contempt and sanctions, requesting damages, attorney fees, and sanctions on the grounds that the garnishment action violated the automatic stay.[1]

We note that the debtor's confirmed Chapter 13 plan required $75.00 per month for 36 months. According to her schedules, the debtor earns $1,550.00 per month. Under the terms of the plan, all property of the estate re-vested in the debtor upon confirmation. The Court entered an order confirming the Chapter 13 plan on February 6, 1995. Littmans did not file a proof of claim for the post-petition debts and the plan failed to provide for said debts.

## ANALYSIS

The automatic stay operates to prohibit certain collection efforts upon the filing of the bankruptcy petition. It bars collection actions against the (1) debtor which actions could have been brought pre-petition; (2) property of the debtor in an effort to collect pre-petition debts; and (3) property of the estate regardless of whether the debt arose before or after the filing of the bankruptcy petition. *Nevada National Bank v. Casgul of Nevada, Inc. (In re Casgul Nevada, Inc.),* 22 B.R. 65, 66 (9th BAP 1982); *In re Thompson,* 142 B.R. 961, 963 (Bankr.Co.1992); *American General Finance, Inc. v. McKnight (In re McKnight),* 136 B.R. 891, 893 (Bankr.S.D.Ga.1992); *In re Petruccelli,* 113 B.R. 5, 6 (Bankr.S.D.Cal.1990). In the case at bar, we are concerned only with the third prohibition since the debt was incurred post-petition. The remedies against a creditor violating the stay are set forth under § 362(h), which provides for aggrieved persons to receive awards of actual damages, including costs and attorney's fees, and punitive damages, for willful violation of the stay.[2]

At the time of the filing of the bankruptcy petition, property of the estate is defined by § 541. The very nature of a Chapter 13 case as a debt extension proceeding necessitates a departure from the approach applicable in liquidation proceedings that property of the estate be determined, for the most part, as of the commencement of the case. 5 *Collier On Bankruptcy* ¶ 1306.01[1] 1995. Instead, property of the estate for Chapter 13 purposes must encompass property interests of the debtor during the pendency of the entire Chapter 13 case, as well as property rights acquired by the Chapter 13 estate after the commencement of the case. *Id.* Accordingly, § 1306 incorporates and expands upon the definition of "property of the estate" found in § 541. Section 1306 states:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
>
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first ...

Furthermore, unless the plan or the order confirming the plan provides otherwise, the order of confirmation vests all property of the estate in the debtor. Section 1327(b) states:

> Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

---

**1.** The debtor did not argue that the lawsuit and judgment obtained by Littmans violated the stay. Therefore, we do not address this issue.

**2.** Section 362(h) states:

The case at bar poses two issues for the Court to consider. The threshold issue is whether there can be any property of the estate upon which the automatic stay can operate upon confirmation of a Chapter 13 plan. If the answer is negative, then Littmans and Tiffany did not violate the automatic stay since there was nothing upon which the stay can protect. If the answer is affirmative, then we must determine whether all post-petition earnings become property of the estate and thus protected by the automatic stay.

■ Littmans and Tiffany argued that property of the estate in the instant case ceased to exist upon the confirmation of the plan. Since the plan did not provide otherwise, they argue, the order of confirmation vested all property of the estate in the debtor. They conclude that they did not violate the stay because there was no property of the estate remaining upon which the stay can operate.

We first note that courts have disagreed on whether property of the estate exists after the Chapter 13 plan is confirmed. There are several lines of cases as to how to reconcile seemingly conflicting provisions of §§ 1306(a) and 1327(b). One line of cases has held that upon confirmation of the plan, property that is necessary to implement the Chapter 13 plan remains property of the estate upon which the stay operates to protect. *See Price v. United States,* 130 B.R. 259, 269–270 (N.D.Ill.1991); *In re Ziegler,* 136 B.R. 497, 501 (Bankr.N.D.Ill.1992); *Riddle v. Aneiro (In re Aneiro),* 72 B.R. 424, 429 (Bankr. S.D.Ca.1987); *In re Clark,* 71 B.R. 747 (Bankr.E.D.Pa.1987); *In re Root,* 61 B.R. 984 (Bankr.D.Col.1986); *In re Dickey,* 64 B.R. 3 (Bankr.E.D.Va.1985); *Weymouth v. York (In re York),* 13 B.R. 757 (Bankr.D.Me.1981); *In re Adams,* 12 B.R. 540, 542 (Bankr.D.Utah 1981). *Cf. In re Rutt,* 98 B.R. 490 (Bankr. D.Neb.1988). In contrast, another line of cases has held that two things occur upon confirmation of the plan: (1) property of the estate is vested in the debtor unless provided for otherwise in the plan; and (2) there is no longer any property of the estate remaining upon which the stay can operate. *See Shell Oil Co. v. Capital Financial Services,* 170 B.R. 903, 905–906 (S.D.Tex.1994) *In re Rhodes,* 1995 WL 128486 (Bankr.D.Idaho 1995); *In re McCray,* 172 B.R. 154, 156 (Bankr.S.D.Ga.1994); *Lambright v. United States (In re Lambright),* 125 B.R. 733, 735 (Bankr.N.D.Tex.1991); *In re Jones,* 152 B.R. 155 (Bankr.E.D.Mich.1993); *In re Petruccelli,* 113 B.R. 5, 16 (Bankr.S.D.Cal.1990); *In re Walker,* 84 B.R. 888, 888 (Bankr.D.D.C.1988); *In re Mason,* 45 B.R. 498, 500 (Bankr.D.Ore. 1984), *affirmed,* 51 B.R. 548 (D.Ore.1985); *In re Stark,* 8 B.R. 233, 234 (Bankr.N.D.Ohio 1981). *See also Laughlin v. United States,* 98 B.R. 494, 495–496 (D.Neb.1989). In another line of reasoning, the court in *Riddle v. Aneiro (In re Aneiro),* 72 B.R. 424, 429–430 (Bankr.S.D.Ca.1987), held that although confirmation of the plan vests property of the estate with the debtor, the debtor's ownership interest in such property is limited to the extent that it is required to implement the plan. In other words, the debtor gets ownership and possessory rights to the property but the debtor is not free for all purposes to do with it as he pleases.

■ After reviewing the above-mentioned cases and the reasoning therein, the Court agrees with the first line of cases. Upon confirmation of the plan, the estate continues to exist. There are several reasons for this conclusion. First, there must be some property of the estate remaining after confirmation for the Chapter 13 Trustee to administer and upon which the Trustee makes a final report. *Thompson,* 142 B.R. at 963. If there never is any property of the estate after confirmation, then what is there for the Trustee to collect from the debtor and then disburse to and for the benefit of the creditors under the confirmed plan? *Ziegler,* 136 B.R. at 501. If they do not receive and disburse property of the estate, why are they needed? *Id.*

Second, to determine that § 1327(b) to mean that there is no property of the estate after confirmation would render § 1306(a) superfluous. *Thompson,* 142 B.R. at 963– 964. This is necessarily so because Congress intended to protect earnings and property that are acquired by the debtor post-petition and necessary to implement the plan. Without § 1306(a), any property that the debtor

acquires post-confirmation can be seized without regards to the Chapter 13 process. Congress did not say in § 1306(a) that earnings and properties acquired post-petition are property of the estate until the Chapter 13 plan is confirmed. *Thompson,* 142 B.R. at 963. Rather, it said that such property and earnings are property of the estate until the case is closed, dismissed, or converted. *Id.*

Third, our decision would also give § 1306(b) full effect. Section 1306(b) provides:

> Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

This section does not apply until confirmation. If at the time after confirmation there is no property of the estate, then there is no reason to grant the debtor possession. *Thompson,* 142 B.R. at 964.

█ Finally, the clear language of § 1306 demonstrates that confirmation of the plan is not relevant to determining whether property is or is not property of the estate. *Aneiro,* 72 B.R. at 429. The relevant events in this determination are commencement of the case and either dismissal, closing or conversion of the case. *Id.* If Congress had intended for confirmation to so drastically affect the expansive definition of property of the estate in § 1306, it knew how to draft such a provision. *Id.*[3]

█ We next address the effect of confirmation on the debtor's post-petition earnings. The debtor argues that all post-petition earnings are property of the estate under § 1306(a) and thus protected by the automatic stay from collection actions by post-confirmation creditors. Specifically, the debtor argues that not only post-petition earnings are property of the estate, but also that they remain so until the cases is closed, dismissed or converted to a case under Chapter 7, 11, or 12.

The debtor also argues that policy considerations favored a judgment in her favor.

She argues that allowing Littmans to garnish the portion of the earnings over $75.00 would result in great prejudice to her. Such a garnishment threatens her ability to complete her plan payments because it reduces the debtor's already limited resources. The garnishment may force the debtor to use the money allocated to pay the plan and thus frustrate her ability to complete the Chapter 13 plan and thus destroy her ability to receive a discharge. *In re Davidson,* 72 B.R. 384 (Bankr.D.Colo.1987). Furthermore, if the plan cannot be consummated, the unsecured creditors would also be prejudiced since they would not receive any payments. We decline to adopt these arguments.

█ Addressing the debtor's legal argument, we conclude that earnings acquired post-confirmation and necessary to implement the Chapter 13 plan remains property of the estate after the plan is confirmed unless the plan states otherwise. *Hudson v. U.S. (In re Hudson),* 168 B.R. 448, 449 (Bankr.S.D.Ga.1994); *Rogers v. Overstreet (In re Rogers),* 164 B.R. 382, 394 (Bankr. N.D.Ga.1994); *In re Markowicz,* 150 B.R. 461, 462 (Bankr.D.Nev.1993); *American General Finance, Inc. v. McKnight (In re McKnight),* 136 B.R. 891, 894–895 (Bankr. S.D.Ga.1992); *Ziegler,* 136 B.R. at 500; *Adams,* 12 B.R. at 542. Only that portion that is necessary to make the plan payments becomes property of the estate and protected by the automatic stay. *In re McCray,* 172 B.R. 154, 156 (Bankr.S.D.Ga.1994); *Markowicz,* 150 B.R. at 462; *Thompson,* 142 B.R. at 964; *McKnight,* 136 B.R. at 894–895; *Ziegler,* 136 B.R. at 500; *Root,* 61 B.R. at 985. The balance of such post-confirmation earnings belongs to the debtor as her individual property and is not insulated from post-petition claims nor protected by the automatic stay. *Rogers,* 164 B.R. at 394; *Ziegler,* 136 B.R. at 500; *Root,* 61 B.R. 984. Applying these conclusions of law to the facts of the instant case, only $75.00 of the debtor's monthly earnings is protected by the automatic stay. This meant that Littmans could

---

**3.** In this District, Judge Botstetter, Chief Judge, has held in *Dickey,* 64 B.R. at 4, that all property of the estate vested in the debtor and the estate was terminated upon confirmation of the Chapter 13 plan. However, *Dickey* involved property other than post-confirmation earnings. Therefore, *Dickey* is distinguishable from the instant case.

garnish up to $1,475.00 per month from the debtor's net monthly income of $1,550.00. Littmans garnished $417.59. Accordingly, Littmans (and Tiffany) did not violate the automatic stay automatic stay when it garnished the debtor's income to satisfy the post-petition debts.

We note that the *Petruccelli, Lambright* and *Rhodes* courts have reached even stronger conclusions. These courts held that pursuant to § 1327(b) all property of the estate vests in the debtor upon confirmation of the plan, without regard to whether or not such property is necessary to implement the plan. We disagree because this interpretation would allow the creditor to levy against all of the debtor's property, including that property in the hands of the Chapter 13 Trustee. The holding of these courts would require debtors to specifically delay re-vesting in the plan or to vest property of the estate in an entity other than the debtor. *See, e.g., Petruccelli,* 113 B.R. at 17; *Laughlin,* 98 B.R. at 496; *Davidson,* 72 B.R. at 390; *Walker v. California Mortgage Service (In re Walker),* 67 B.R. 811, 812 n. 3 (Bankr.C.D.Cal.1986), *affirmed,* 861 F.2d 597 (9th Cir.1988); *Denn v. Aarestad (In re Denn),* 37 B.R. 33, 35–36 (Bankr.D.Minn.1983); 5 *Collier On Bankruptcy* ¶ 1327.01[2] (1995).[4] We do not believe that this was Congress' intent. Section 1327(b) is an efficient adaption of Bankruptcy Act Section 70(I). It implements a major theme of Chapter 13 by preserving to the debtor possession of all property, except as otherwise required to effectuate the confirmed plan. *Id.*

Turning to the debtor's policy arguments, we find them equally unpersuasive. The primary concern proffered by the debtor is that the Court should protect the debtor from herself. She chose to purchase the ring and video cassette recorder when she possibly could not afford to pay for them. She was in bankruptcy and, according to her schedules, could barely pay her living expenses and make her plan payments. The prejudice the debtor raises was her own doing and the Court will not allow her to use the bankruptcy process as a sword against the unwary creditor who extended credit to her without knowledge of her bankruptcy.

■ Addressing the debtor's argument concerning the unsecured creditors, the Court finds that argument unpersuasive. Unsecured creditors have an interest in the debtor being able to perform under the plan to completion and without post-petition creditors being able to deprive the debtor of its ability to do so by seizing property or wages. *Clark,* 71 B.R. at 749–750. If the case is dismissed, the unsecured creditors can pursue their claims through non-bankruptcy forums to obtain the benefit of their bargain. We do recognize that the unsecured creditors would receive 0% of their claims, according to the debtor's schedules, should the case be converted. However, the Code provides many provisions that favor post-petition creditors over pre-petition creditors. Therefore, we cannot conclude that the prejudice to the unsecured creditors is so severe to warrant another outcome.

■ Furthermore, we find the prejudice to Littmans more equitably compelling. First, it would have no remedy to enforce its claim until case is closed, dismissed or converted. Second, Littmans could not share in the distribution of this plan. It would not qualify to file a post-petition claim under § 1305(a) and § 1305(c) because the items purchased by the debtor were not necessary for the debtor's performance under the plan.[5] Third, Littmans does not have standing to modify the plan to include his claims under § 1329.[6] Since it cannot file a proof of claim

4. While the debtor may delay re-vesting or vest property of the estate, the debtor must file the plan in good faith. *See, e.g., Davidson,* 72 B.R. at 390, n. 1.

5. Sections 1305(a) and 1305(c) state:
   (a) A proof of claim may be filed by any entity that holds a claim against the debtor—
   (1) for taxes that become payable to a governmental unit while the case is pending; or
   (2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan ...
   (c) A claim filed under subsection (a)(2) of this section shall be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained.

6. A creditor must be a holder of an allowed unsecured claim to have standing to modify a confirmed plan under § 1329(a), which states:

as contemplated in § 1305 and thus get an allowed claim, it necessarily does not have standing to modify the plan. *See, e.g., In re Clark,* 71 B.R. 747 (Bankr.E.D.Pa.1987).

 As a final note, our decision is limited to post-petition earnings as contemplated by § 1306(a)(2). We do not deal with property acquired post-petition as set forth in § 1306(a)(1). Post-petition earnings dedicated to the Chapter 13 Trustee are easily discernible for purposes of determining whether such funds are necessary to implement the plan. Property other than earnings are not so readily discernible and must be determined on a case-by-case basis. Therefore, we expressly limit this opinion to the post-confirmations earnings.

## ORDER

For the reasons stated above, the motion of the debtor for contempt and sanctions against Littmans, Inc., and its counsel, W. Wayne Tiffany, is DENIED.

IT IS SO ORDERED.

At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim . . .