In re WILDER, Brian K., SSN: 498–72–2852, Wilder, Susan K., SSN: 232–17–6651, Debtors.

Bankruptcy No. 94–74337B.

United States Bankruptcy Court, D. South Carolina.

Oct. 16, 1997.

ously confirmed Chapter 13 Plan. The Debtors asserted that the claim constituted a lien against their personal residence that would be paid outside the Chapter 13 Plan. Debtors also asserted that the claim did not constitute an administrative expense pursuant to 11 U.S.C. § 503(b)(1). Debtors contend that § 1305 is the appropriate basis for determining the allowability of the post petition claim.

## FINDINGS OF FACT

Debtors filed a Chapter 13 Petition on September 12, 1994. Ashleytowne Village was properly included on the mailing list and received Notice of the Commencement of the case on or about September 28, 1994, along with a proof of claim form. A representative of creditor contacted Debtors' attorney regarding the ongoing payment of regime fees that were owed by the Debtors shortly after the filing of the case. On May 26, 1995, a motion to allow claims was filed; Creditor did not file a claim.

On March 14, 1997, an Order was entered modifying the automatic stay as to Fleet Mortgage, the holder of the first mortgage on the residence. Subsequent thereto, the Debtors vacated the property. Fleet Mortgage has resumed its foreclosure on the property. On April 28, 1997, Creditor filed its unsecured proof of claim, asserting entitlement to priority status for unpaid regime fees that had accrued since the filing of the Chapter 13 case. Creditor has not filed a motion to modify the automatic stay to proceed in State court to enforce its lien rights in the property. Nor has Creditor filed any motion seeking leave of the Court to file a late claim.

Elizabeth Atkins, Charleston, SC, for Debtor.

Charles Altman, Finkel & Altman, L.L.C., Charleston, SC, for Creditor.

## ORDER

WM. THURMOND BISHOP, Bankruptcy Judge.

This matter came before the Court upon the Reply to Trustee's Objection to Claim, filed by Ashleytowne Village I. The Debtors also filed a Reply to the Objection to Claim, asking the Court to uphold the Trustee's objection and disallow the proof of claim. The Trustee objected to the claim on the grounds that the claim represented a post petition obligation that should be paid by the Debtors and not paid pursuant to the previ-

## CONCLUSIONS OF LAW

■ At the outset, this Court must determine whether Creditor has a valid claim as defined by 11 U.S.C. § 101(5). Pursuant to § 101(5), a claim includes any right to payment, whether or not liquidated as of the time of filing the case. Two distinct theories have arisen in interpreting claims for regime fees. The first line of cases holds that the claim for regime fees arises from a pre-petition agreement between Debtors and creditors because of Debtors' ownership of

the underlying real property. The Debtors do not have the ability to separate their ownership of the real property from the obligation to pay the regime fees. In other words, the obligation for the regime fees arises from their ownership of the property; once the Debtors ownership of the real property is extinguished, then Debtors owe no further obligation. Accordingly, any obligation owed to creditor would be a pre-petition debt since the obligation relates to a pre-petition agreement, and would be subject to discharge. *See Affeldt v. Westbrooke Condominium Ass'n,* 164 B.R. 628 (Bkrtcy. D.Minn.1994) and *Matter of Garcia,* 168 B.R. 320 (Bkrtcy.E.D.Mich.1993).

The second line of case, supported by the Fourth Circuit, has held, in the context of a Chapter 7 case, that post-petition regime fees are post-petition obligations that are not subject to discharge. *In re Rosenfeld,* 23 F.3d 833 (4th Cir.1994). The *Rosenfeld* court also declined to hold that the regime obligation was in the nature of an executory contract since the obligation is inseparable from the ownership interest in the real property. The obligation does not arise from a pre-petition obligation, but rather, from post-petition ownership of the real property. *See In re Gonzalo,* 169 B.R. 13, (Bkrtcy.E.D.N.Y.1994).

■ Pursuant to South Carolina law, Creditor has a statutory lien for any regime fees. Creditor holds a Master Deed, recorded in the RMC office in Charleston County, that provides for the assessment of regime fees and identifies the General Common Elements of the property, of which Debtors hold a percentage interest. The modification of the automatic stay by Fleet Mortgage to proceed with its foreclosure entitles Creditor to participate in the foreclosure of its interest in the property which includes its lien rights for unpaid assessments.

Creditor holds a post-petition claim secured by a lien in the real property. Since the automatic stay has been modified to release the real property from the Bankruptcy estate, the lien of creditor should no longer be recognized by the Bankruptcy court and creditor should be entitled to a deficiency claim, if any exists after the completion of the foreclosure. The next step in the analysis is to determine the character of that unsecured claim and whether the claim is allowable given the fact that the claim was not timely filed.

■ Creditor argues that its unsecured claim is entitled to priority status pursuant to § 503(a)(1)(A) because its claim represents a necessary cost of preserving the estate. However, Creditor has failed to explain the reasons for the tardy filing of its claim and has ignored the strictures of § 503(a) which requires a creditor to timely file a request for allowance of an administrative claim. Further, creditor has failed to proffer any cause for the tardiness of its claim which is explicitly required by § 503(a).

■ The Chapter 13 case was filed on September 12, 1994; no dispute exists that Creditor received timely notice of the filing of the case. Creditor has asserted that it failed to pursue collection of its claim until April, 1997, because such collection was not cost effective. Creditor also admitted its entitlement to a secured claim. Essentially, Creditor waited until the stay was modified by the mortgage holder to file its claim and is now taking the position that, while it holds a secured claim, the cost to pursue that claim is not cost effective. Creditor seeks to parlay its delay in exercising its rights against the property into an administrative claim. The Court is not persuaded that the reason for the delay in Creditor exercising its rights constitutes cause for allowing an untimely claim.

Even if cause existed for tardily filing the claim pursuant to § 503(a), the allowance of creditor's claim is governed by § 1305(a)(2) which specifically deals with post-petition claims for property or services necessary for the Debtors' performance under a Chapter 13 plan. Accordingly, although § 503(b) addresses property and services necessary for preserving the estate, the provision is not applicable at this juncture in this Chapter 13 case. The majority of the case law that interprets § 1305 revolves around whether the claim is necessary for the performance of a debtor under their Plan. *See In re Leavell,* 190 B.R. 536 (Bkrtcy.E.D.Va.1995) and *In re Smith,* 179 B.R. 437 (Bkrtcy.E.D.Pa.1996).

No dispute exists that the purpose of the regime fees was to maintain the Debtors' personal residence, thus ensuring that the Debtors had a place to live while performing under the terms of the their Chapter 13 Plan.

The dispute centers on whether the claim should be allowed given the fact that Creditor failed to file its claim until twenty eight (28) months *after* receiving notice of the commencement of the Chapter 13 case. Pursuant to § 1305(c), a post petition claim "... shall be disallowed if the holder of such claim knew or should have known that prior approval by the trustee of the debtor's incurring the obligation was practicable and was not obtained." In this case, Creditor had knowledge that the Chapter 13 case had been filed, and received a proof of claim form along with the Notice of the Commencement of the case. Despite having actual notice and a proof of claim form, creditor chose to ignore its remedies under the Bankruptcy laws to file a proof of claim or obtain relief from the automatic stay. The essence of § 1305(c) is to prevent such an occurrence which results in diminishing the monies available for distribution to creditors who timely filed their claims upon receiving notice of the filing of the case.

## CONCLUSION

Based on the foregoing, the Court finds that Creditor holds a claim that is not allowable pursuant to § 1305(c). Creditor's delay in exercising its rights to file a claim until twenty eight (28) months after the filing of the Chapter 13 case precludes the allowance of the claim at this late juncture in the case and would impair the rights of other creditors. Creditor should have known that prior approval by the Trustee was necessary and failed to obtain such approval. Creditor has remedies available pursuant to its lien rights in the real property and is free to pursue those remedies.

ACCORDINGLY, IT IS ORDERED that the unsecured priority claim of Ashleytowne Village I is disallowed.