In re Chris H. REYNARD and Bianca I. Reynard, Debtors.

Montclair Property Owners Association, Inc., Plaintiff,

v.

Chris H. Reynard and, Bianca I. Reynard, Defendants.

No. 98–11946–RGM.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

June 27, 2000.

---

Mark S. Weiss, Woodbridge, Virginia, for debtor.

William M. Vermette, Vienna, Virginia, for plaintiff.

### *MEMORANDUM OPINION*

ROBERT G. MAYER, Bankruptcy Judge.

The question presented by this chapter 13 case is whether a homeowner's association is prohibited by the automatic stay imposed by § 362 of the United States

Bankruptcy Code[1] from collecting post-petition assessments after confirmation of the chapter 13 plan, and, if not, whether relief is necessary to garnish post-petition wages to satisfy a state court judgment for those assessments.

Chris H. Reynard and Bianca I. Reynard filed a voluntary petition in bankruptcy pursuant to chapter 13 of the Bankruptcy Code in this court on March 10, 1998. They owned their home. Pursuant to the Declaration of Covenants, Conditions and Restrictions encumbering their home, they were members of Montclair Property Owners Association, Inc. ("Montclair" or the "Association") and were obligated to pay monthly homeowner association fees. The debtors failed to pay Association fees from October, 1998 through September, 1999,[2] in the total amount of $336.25 together with late charges[3] of $75.00, for a total of $411.25. Montclair filed a motion for relief from the automatic stay imposed by § 362. The motion requested that the stay be modified to permit the Association to proceed against the debtors to the "full extent allowed by law" to collect post-petition assessments, late charges, interest, attorney's fees[4] and costs of collection. As of the date of the hearing on the motion for relief from stay, the debtors were current in their payments to the chapter 13 trustee.

▆▆▆ The automatic stay provided in § 362 of the Bankruptcy Code prohibits a variety of collection activities. One is the commencement or continuation of an action against the debtor that was or could have been commenced before the commencement of the bankruptcy case to recover a claim against the debtor that arose before the commencement of the bankruptcy case. § 362(a)(1). This does not prevent the commencement of a lawsuit to collect a post-petition debt. *In re Henline*, 242 B.R. 459, 467 (Bankr.D.Minn., 1999); *Hudson v. United States (In re Hudson)*, 168 B.R. 448, 449 (Bankr. S.D.Ga., 1994). Homeowner association fees assessed after the filing of a voluntary petition in bankruptcy are post-petition debts, not pre-petition debts. *River Place East Housing Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833, 837 (4th Cir., 1994), *cert. denied*, 513 U.S. 874, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994), *reh'g denied*, 513 U.S. 1035, 115 S.Ct. 622, 130 L.Ed.2d 530 (1994).[5] Montclair does not need relief from the automatic stay to demand payment of post-petition Association fees for which the debtors are liable or to file suit to collect those fees. *Id.* at 836–37; *In re Shuman*, 122 B.R. 317, 318 (Bankr. S.D.Ohio, 1990).

▆▆▆ The right to undertake collection activity, including filing a lawsuit, to collect a post-petition debt does not allow all collection activities. The automatic stay prevents any act to create, perfect, or enforce any lien against property of the estate, and any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the

---

1. All statutory references are to the Bankruptcy Code, Title 11 of the United States Code except as otherwise noted.

2. Norwest Mortgage, Inc., the holder of the note secured by a first deed of trust on the property, was granted relief from the automatic stay by a consent order entered on February 24, 1999. The consent order permitted the debtors to cure a post-petition mortgage arrearage over a period of six months and required them to pay all future mortgage payments on time. The debtors did not comply with the order. The property was sold at foreclosure on September 27, 1999.

3. Late charges are $15.00 per month on a monthly assessment of $31.25.

4. Montclair requested attorney's fees of $1,277.00 to collect $411.25.

5. After *River Place* was decided, Congress amended Section 523 by adding § 523(a)(16) which provides or the non-dischargeability of condominium and cooperative assessments for the post-petition period during which the debtor physically occupies the unit or rents the unit and receives payments from the tenant. It is not necessary to address the absence of homeowner associations within the express provisions of § 523(a)(16).

estate. §§ 362(a)(4) and (a)(3), respectively. Consequently, a post-petition creditor who has the right to initiate a suit against a debtor and obtain a judgment for a post-petition debt without violating the automatic stay may not have recourse to execute on all assets that would have been, but for the filing of a chapter 13 petition, property of the debtor. Recourse is limited to property that is not property of the estate. *Hudson, supra*, at 449; *Shuman, supra*, at 318; *In re Woodall*, 81 B.R. 17, 18 (Bankr.E.D.Ark., 1987).

Courts have taken different approaches with respect to the extent of the estate after confirmation of a chapter 13 plan and, indeed, whether there is an estate after confirmation. The question is particularly relevant with respect to post-confirmation earnings. *See United States Postal Service v. Black (In re Heath)*, 198 B.R. 298, 303–04 (S.D.Ind., 1996) (estate continues and consists of post-petition earnings committed to funding the plan); *Taylor v. Mississippi Learning Inst. (In re Taylor)*, 151 B.R. 772, 775 (Bankr.N.D.Miss., 1993) (wages earned post-petition remain property of the estate and the automatic stay applies to fully protect all post-petition earnings); *In re Petruccelli*, 113 B.R. 5, 15 (Bankr.S.D.Cal., 1990) (absent a contrary provision in the plan or order of confirmation, all property revests in the debtor upon confirmation and the estate terminates).

■■■ The difference of opinion arises from the definition of property of a chapter 13 estate, § 541 as modified by § 1306(a), and the effect of confirmation of a chapter 13 plan, § 1327(b). Section 541 establishes the extent of a bankruptcy estate. It is measured, with some exceptions, as of the filing of the petition. This is the point of cleavage. In a chapter 7 case, debts as of that date are, unless otherwise provided, discharged. In return, the debtor surrenders to the trustee all of his non-exempt property as of the same date. In a liquidation proceeding under chapter 7, this works well; however,

chapter 13 is intended as a financial reorganization. In order to have assets available to fund the reorganization, a modification to § 541 is necessary. Section 1306 accomplishes this. It provides:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

While this seems fairly straight forward, its impact is clouded by § 1327(b). Section 1327(b) states:

Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

On the one hand, § 1306(a) seems to include in the chapter 13 estate all property acquired by a debtor after confirmation, including future earnings. On the other hand, § 1327(b) seems to revest all property of the estate in the debtor, resulting in an estate without assets. The resolution of these competing provisions is not academic. If there is no post-confirmation chapter 13 estate, § 542 would have no effect in a chapter 13 case. Section 542 requires the turnover to the trustee of property of the estate. A trustee would not be able to use, sell or lease property under § 363. Section 363 is limited to

property of the estate. Sections 362(a)(2), (3) and (4) would have no effect because there would be no property of the estate. If there is an estate and post-confirmation earnings are protected by the automatic stay, post-petition creditors may be prejudiced; if there is no estate or post-confirmation earnings are not protected by the automatic stay, pre-petition creditors may be prejudiced. *Henline, supra,* at 467; *In re Ziegler,* 136 B.R. 497, 502 (Bankr. N.D.Ill., 1992).

 *In re Leavell,* 190 B.R. 536 (Bankr.E.D.Va., 1995) contains an excellent discussion of the question of whether any estate survives confirmation of the chapter 13 plan. It seeks to harmonize the two statutory sections and concludes that an estate does continue. The Bankruptcy Code must be read as a whole. *Food and Drug Administration v. Brown & Williamson Tobacco Corp.,* — U.S. ——, 120 S.Ct. 1291, 1301, 146 L.Ed.2d 121 (2000); *United Hospital Center, Inc. v. Richardson,* 757 F.2d 1445, 1451 (4th Cir., 1985). When two provisions may conflict, a construction that renders one superfluous or insignificant should be avoided. *Kawaauhau v. Geiger,* 523 U.S. 57, 62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). *Leavell* points to several sections of the Bankruptcy Code that would be rendered meaningless if the expansive construction of § 1327(b) were adopted. *Id.* at 539. For example, the chapter 13 trustee's duties are, in part, established by reference to a chapter 7 trustee's duties. Section 1302(b)(1) requires that the chapter 13 trustee perform the same duties as a chapter 7 trustee set out in §§ 704(2), (3), (4), (5), (6), (7) and (9). In particular, § 704(9) requires that the chapter 13 trustee "make a final report and file a final account of the administration of the estate." If § 1327(b) were given literal effect and the estate terminated upon confirmation, there would be nothing for the trustee to collect or

disburse. There would be no need for a final report or a final account.

*Leavell* notes that both § 1306(b) and § 1327(b) refer to confirmation and that § 1306(a) extends until the case is closed, dismissed or converted—a period which includes the post-confirmation period. *Id.* at 539–40. The court states:

> [T]o determine that § 1327(b) to mean that there is no property of the estate after confirmation would render § 1306(a) superfluous. *In re Thompson,* [142 B.R. 961, 963–64 (Bankr.D.Colo., 1992)]. This is necessarily so because Congress intended to protect earnings and property that are acquired by the debtor post-petition and necessary to implement the plan. Without § 1306(a), any property that the debtor acquires post-confirmation can be seized without regards to the Chapter 13 process. Congress did not say in § 1306(a) that earnings and properties acquired post-petition are property of the estate until the Chapter 13 plan is confirmed. *Thompson,* 142 B.R. at 963. Rather, it said that such property and earnings are property of the estate until the case is closed, dismissed, or converted.

*Id.*

 Since both § 1306 and § 1327(b) relate to the post-confirmation period or are effective upon confirmation, § 1327(b) cannot be read so expansively as to terminate the then-present chapter 13 estate and eliminate the potential future chapter 13 estate assets without depriving § 1306(a) of all meaning. The only manner in which the two provisions can be read in harmony is if the assets of the chapter 13 estate as of the date of the confirmation of the chapter 13 plan vest in the debtor, the estate continues and assets set out in § 1306(a) acquired after confirmation become property of the chapter 13 estate when acquired. The after-acquired assets cease to be property of the estate at the same time and in the same manner as in a chapter 7 or chapter 11 case or as

provided in § 1307(a).[6] Property ceases to be property of the estate if it is abandoned (§ 554), exempted (§ 522) or sold or used (§ 363). *See, e.g., Samore v. Olson (In re Olson),* 930 F.2d 6, 8 (8th Cir., 1991); *City of Chicago v. Fisher (In re Fisher),* 203 B.R. 958, 960 (N.D.Ill., 1997); *Riggs Nat'l Bank of Washington, D.C. v. Perry (In re Perry),* 29 B.R. 787, 793 (D.Md., 1983); *In re Rangel,* 233 B.R. 191, 193–94 (Bankr. D.Mass., 1999); *Leavell, supra,* at 540.

This construction gives effect to § 1306(b) which provides that "the debtor shall remain in possession of all property of the estate." *Leavell, supra,* at 540; *Thompson, supra,* at 964. It also gives meaning to § 347(a) which provides that 90 days after the final distribution in a chapter 13 case, the trustee shall stop payment on outstanding checks "and remaining *property of the estate* shall be paid into the court." If after confirmation there is no property of the estate, there is no property of the estate to remain in the possession of the debtor and there could be no property of the estate to be paid into the court by the chapter 13 trustee.

The effect of conversion under § 348(f)(2) reinforces the conclusion that a chapter 13 estate survives confirmation. Section 348(f)(2) provides that if a chapter 13 case is converted to a case under another chapter in bad faith, "the property in the converted case shall consist of the property of the estate as of the date of conversion." If the chapter 13 estate terminates on confirmation there would never be any property of the chapter 13 case as

of the date of conversion and § 348(f)(2) would be rendered meaningless.[7]

■ Determining that a chapter 13 estate survives confirmation does not resolve the extent of the post-confirmation chapter 13 estate. Courts finding a post-confirmation chapter 13 estate disagree as to the extent of the estate, particularly with respect to post-confirmation earnings and, therefore, the extent of the automatic stay. *Leavell* held that the post-confirmation chapter 13 estate consists only of those assets necessary for the success of the chapter 13 plan and that the automatic stay insulates post-confirmation earnings only to the extent of the chapter 13 plan payment. "The balance of such post-confirmation earnings belongs to the debtor as her individual property and is not insulated from post-petition claims nor protected by the automatic stay." *Leavell, supra,* at 540. In the context of that case where the chapter 13 plan payment was $75.00 per month, this meant that the post-petition creditor could garnish the debtor's wages in excess of $75.00 per month.[8] *Id. at* 541–42. *Leavell* is not alone. *See also Ziegler, supra,* at 500; *Riddle v. Al Aneiro (In re Al Aneiro),* 72 B.R. 424 (Bankr. S.D.Cal., 1987). Other courts have held that all post-confirmation earnings are part of the chapter 13 estate and are fully protected by the automatic stay. *See, e.g., Fisher, supra,* at 964; *Rangel, supra,* at 194; *Holden v. United States (In re Holden),* 236 B.R. 156, 161 (Bankr.D.Vt., 1999).

The latter line of cases is more compelling. Section 1306(a) itself does not distin-

---

6. The chapter 13 debtor remains in possession and has the right to use the estate's property in the ordinary course of his financial affairs. § 1306(b). *See also* § 348(f)(1)(A) ("property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, *that remains in the possession of or is under the control of* the debtor on the date of conversion").

7. There are few instances when application of § 348(f)(2) would benefit creditors. *See, e.g., In re Lybrook,* 951 F.2d 136 (7th Cir., 1991).

8. Except in special cases, such as support and tax matters, three-quarters of an individual's disposable earnings are exempt from garnishment. Code of Virginia § 34–29 (1996 Repl. Vol.). *See In re Wilkinson,* 196 B.R. 311, 316 (Bankr.E.D.Va., 1996). The post-petition creditor could reach $312.50 of the debtor's disposable earnings per month, that is, one-quarter of $1,550.00 ($387.50) less $75.00 for the chapter 13 plan.

guish between property that is necessary for the success of the chapter 13 plan and property that is not necessary. *Fisher*, *supra*, at 962–63. If any estate remains by virtue of § 1306(a) after confirmation, then all the property enumerated in § 1306(a) should become property of the post-confirmation chapter 13 estate. There is also a practicable problem inherent in limiting the post-confirmation estate only to property necessary for the success of the chapter 13 plan. What property is necessary for the success of the chapter 13 plan? In a joint case, in the absence of a wage order under § 1325(c), which debtor's wages are protected by the automatic stay? In an individual case where the debtor holds more than one job, which paycheck is necessary for the success of the chapter 13 plan? Which one is not protected by the automatic stay and is subject to garnishment? There is nothing that distinguishes the debtor's paycheck from the co-debtor's paycheck or the debtor's primary paycheck from his secondary paycheck. Money is fungible.

The practical problem is illustrated by contrasting the results in *Ziegler* and *In re Lauria*, 243 B.R. 705 (Bankr.N.D.Ill., 2000). In *Ziegler*, the post-petition creditor garnished the debtor's post-confirmation wages, but only after the creditor had determined that the garnishment "would not interfere with plan payments to the Trustee and that the Debtors were in default in those payments." *Id.* at 499. *Ziegler* held that only those post-petition wages necessary to effectuate the plan were property of the estate, that the garnishment did not impair plan payments and, therefore, that the creditor's garnishment did not violate § 362. But in *Lauria*, the court ordered debtor's former non-bankruptcy attorney to turnover payments received by the attorney pursuant to a settlement with a third party that he had negotiated. This holding required finding that the $500 a month payments were property of the estate. *Ziegler* and *Lauria* reflect the difficulty inherent in the view that only property necessary to effec-

tuate the chapter 13 plan remains property of the estate. All post-confirmation earnings look alike. One paycheck looks like another. There is nothing to distinguish one as being necessary for the successful completion of the chapter 13 plan and the other not being necessary. A creditor runs the risk of making the wrong initial determination of whether the wages, income or other property in question are necessary for the success of the chapter 13 plan, constitute property of the estate and are protected by the automatic stay; or whether they are not property of the estate and are subject to garnishment or seizure to satisfy a post-petition judgment. Nor is it apparent why a creditor—rather that the court—should be making that determination in the first instance.

The chapter 13 plan payment is not the only payment necessary for the successful completion of a chapter 13 plan. Frequently, the confirmed plan requires the debtor make payments directly to a secured creditor, in this case the mortgage company, and in other cases, the car finance company. If the direct payments are not timely made, the secured creditor will seek relief from the automatic stay in order to repossess the vehicle or sell the home at foreclosure. If relief is granted, the chapter 13 case typically converts to a chapter 7 proceeding or is dismissed, both to the prejudice of the unsecured creditors provided for in the chapter 13 plan. Saving the family home or the family car is a key incentive to selecting chapter 13 over chapter 7—a selection frequently more beneficial to unsecured creditors than chapter 7. Not only is the plan payment to the chapter 13 trustee necessary for the success of the plan, but the direct payments to the secured creditors are also necessary.

The payments required by a confirmed chapter 13 plan, either to the chapter 13 trustee or directly to the secured creditors, do not insure successful completion of the chapter 13 plan. In

addition to these plan payments, the debtor must also be able to pay his living expenses. Confirmation requires that the debtor devote his entire net disposable income to the chapter 13 plan. § 1325(b). Confirmation also requires the court to find that the plan be feasible. § 1325(a)(6). Successful plans require strict adherence to the debtor's budget. A garnishment necessarily reduces the income available to the debtor to make his plan payment to the trustee, the direct payments to his secured creditors, and the payment of his current living expenses. Since the debtor's entire net disposable income must be devoted to the chapter 13 plan, there is nothing left over for a creditor to seize that does not affect a debtor's ability to successfully complete the chapter 13 plan. All post-confirmation earnings—not just the amount of the plan payment—are necessary for the success of a chapter 13 plan and must be property of the post-confirmation chapter 13 estate. They are protected by the automatic stay.

 This construction of the Bankruptcy Code recognizes the conditions necessary for the successful completion of a confirmed plan. It is not founded on the prejudice that would result to a debtor if garnishment of post-petition earnings were freely permitted. Cf. Leavell, supra, at 540–41. Chapter 13 is not designed to protect a debtor from himself or from his continued feckless spending. However, a single unanticipated event should not result in automatic failure of the chapter 13 plan to the prejudice of the pre-petition creditors. The chapter 13 refuge created by the automatic stay to the extent of property of the estate is temporary, not permanent. The competing demands between pre-petition creditors (both secured and unsecured) and post-petition creditors can be reconciled and balanced by the court on a case-by-case basis in the context

of a motion for relief from the automatic stay.

The creditor in Leavell was properly permitted to garnish the debtor's wages. There was cause to modify the automatic stay to permit the garnishment. The debtor purchased a ring and a video cassette recorder six days after filing a chapter 13 petition.[9] Id. at 538. The debtor did not disclose her bankruptcy to the creditor at the time of the purchase. Id. at 537. The debtor was barely able to pay her living expenses and make her plan payments when she purchased the ring and video cassette recorder. Her monthly income was $1,550.00; the chapter 13 plan payment, $75.00 per month. Id. at 540–41. The confirmed plan was a 36–month plan and did not provide for the post-petition creditor. Id. at 538. The creditor was not included in the plan and, therefore, received no payments from the chapter 13 trustee. The creditor was unable to file a § 1305 claim because the items purchased were not necessary for the debtor's performance under the plan. The creditor could not file a motion to modify the plan under § 1329. Id. at 541–42. It would have been unfair to have delayed the post-petition creditor for three years while the debtor enjoyed the use of the ring and video cassette recorder. Given the debtor's financial situation, delay may well have resulted in denying the post-petition creditor any meaningful recovery. Relief was appropriate.

Other factors may be relevant in other cases. Condominium and homeowner fees are generally periodic. In this case they were $31.50 per month, a modest amount in the budget in this case. The assessment represents the cost of current services provided to the debtors. The Association cannot elect not to have further dealings with the debtor. The relationship is established by recorded covenants.

---

9. In light of the facts of the case, it is questionable whether the chapter 13 plan would have been confirmed if the post-petition purchase had been disclosed prior to confirmation. The purchase would have been a factor in determining whether the proposed plan was feasible.

**250**

The periodic payments were included in the debtors' budget. A garnishment to enforce that obligation is not necessarily inconsistent with the debtors' budget. In any event, the court can impose restrictions on the creditor's activities. At the appropriate time, it may be appropriate to modify the automatic stay to permit collection from property of the estate.

 In this case, the motion for relief to permit execution on property of the estate is premature. The Association does not have a judgment upon which it can execute at this time. The amount of the prospective judgment is unknown.[10] The amount is a factor to be considered as is the fact that the monthly homeowner association fees are no longer due because of the foreclosure, thereby freeing up one of the items in the debtors' budget. The Association has not yet explored other collection activities that would not affect the success of this chapter 13 plan. The Association is asking for prospective relief that may never be needed. The appropriate time to seek relief from the stay is after a final judgment has been obtained in state court and relief is necessary to execute against property of the estate.

The motion for relief from the automatic stay will be denied without prejudice as premature. No relief is necessary to collect post-petition homeowner's assessments from property that is not property of the estate. Collection activities may only be directed to property of the debtors, not property of the estate. All post-confirmation earnings are property of the estate.

---

10. A very significant aspect of the Association's claim—its attorney's fees—has not been determined at this time. The amount to be awarded is principally a matter of state law and should be left to the state court to determine in the first instance. This court is concerned that the attorney's fees. sought are more than three times the amount in controversy. Some of the time entries suggest that the full amount claimed should not be awarded. One series of time entries reflected a court appearance after the filing of the petition in this case for pre-petition association fees. To the extent that actions were taken in violation of the automatic stay, they cannot form the basis for compensation. If a suit had been filed prior to the filing of the petition in this case, it was appropriate to prepare a suggestion in bankruptcy or a praecipe taking a voluntary non-suit. Both could be accomplished with very little effort and at a much reduced cost.

A second problem is the time expended for what appears to be a typical homeowner association collection case. It may well be that the actions for which compensation is sought for attorney's fees should have been accomplished by non-attorneys at significantly reduced expense. This includes general monitoring of the account.

The time period from October, 1999 through January 27, 2000, also raises questions. The fees total $442.50. One time entry for which the fee was $65.50 is described in part as "reconcile account balance." There is a charge of $231.00 described as "Review post-petition delinquency; and Draft Motion for Relief from Stay, Notice, Praecipe, and Order." The motion for relief from stay was unnecessary. Reconciling a homeowner's account generally does not require the skills of an attorney.

The resolution of these matters is best left to the state court which deals with them on a routine basis.