**In the Matter of FEDPAK SYSTEMS, INCORPORATED, Debtor–Appellant.**

**No. 95–1427.**

United States Court of Appeals, Seventh Circuit.

Submitted Sept. 19, 1995.*

Decided April 1, 1996.

---

\* The court granted the parties' joint motion to waive oral argument, pursuant to Fed.R.App.P. 34(a) and Circuit Rule 34(f), and the appeal was submitted on the briefs and the record.

Thomas D. Titsworth (submitted), Mary L. Titsworth, Wooden, McLaughlin & Sterner, Indianapolis, IN, for appellee.

Christopher E. Baker, Elliott D. Levin, Rubin & Levin, Indianapolis, IN, for debtor-appellant.

Before CUMMINGS, BAUER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The debtor-appellant, FedPak Systems, Inc. ("FedPak"), challenges the district court's decision to vacate an order of the bankruptcy court for lack of jurisdiction. We hold that because FedPak did not have standing to seek the order, the bankruptcy court lacked jurisdiction as a matter of constitutional law. Additionally, we hold that the proceeding initiated by FedPak fell outside the scope of the bankruptcy court's statutory jurisdiction under Title 28 U.S.C. §§ 157(a) and 1334(b). The decision of the district court is affirmed.

## I. BACKGROUND

### A. *The 1990 Agreement Between FedPak, Jones et al.*

FedPak, an Indiana corporation, successfully developed and patented a machine that dispenses ice cream, frozen yogurt, and other frozen confections. On July 28, 1990, FedPak entered into a written agreement with Ventura, Inc. (a yet-to-be-formed company[1] whose role would be to develop further patentable technology for FedPak's benefit), Donald Thomas, Sr., and the appellee Stanley R. Jones, a patent attorney and entrepreneur from Hallowell, Maine. Under the agreement, Jones agreed to finance Ventura's research and development costs (at a level not to exceed $10,000 a month for 12.5 months beginning August 1, 1990) and agreed to acquire a 25% interest in Ventura (250 shares of its common stock). Jones pledged to purchase twenty FedPak machines immediately, for placement in retail outlets. FedPak agreed to "fabricate" these machines "using parts and techniques reflecting current art and [to] deliver same by August 15, 1990." The agreement further specified that "[i]f these machines are placed in retail outlets by September 1, 1990, Stan [Jones] agrees to order at that time an additional 80 FedPak machines, and FedPak agrees to deliver same by November 1, 1990." The agreement made Jones a distributor for FedPak in Texas and Maine[2] and declared that additional distributorship territories would become "irrevocably vested" after Jones ordered the additional 80 machines specified in the agreement. Additionally, the agreement authorized Jones to manufacture frozen dessert machines according to FedPak's "patents, drawings, know-how, and other confidential information," provided that Jones kept this information confidential and paid FedPak a one-time royalty of $500 for each machine manufactured pursuant to the licensing agreement.

### B. *Litigation in the Bankruptcy Court Between FedPak and Jones*

In February of 1991, shortly after filing for bankruptcy under Chapter 11, FedPak brought an adversary proceeding against Jones in the bankruptcy court and alleged in its complaint that while it had delivered the initial 20 machines as required by the July 1990 agreement, "only a few [had] been

---

**1.** Ventura was incorporated on September 6, 1990.

**2.** The agreement did not state whether these distributorships were exclusive or otherwise.

placed in retail outlets." According to Fed-Pak, Jones also breached the agreement by failing to order an additional 80 machines after September 1, 1990 (as called for in the agreement), and by not entering into the distributorship arrangements required by the agreement. FedPak asked the court to declare that Jones had breached the agreement prior to the institution of bankruptcy proceedings (thus releasing FedPak from its contractual obligations) and to enjoin Jones from using FedPak's intellectual property.

Jones filed an answer and counter-claim, alleging that he had performed all of his obligations under the agreement, and that FedPak had breached the agreement by failing to supply him with the specified "know-how" information and by failing to deliver the 20 initial machines called for in the agreement.[3] Jones asked the court to declare that the agreement was valid and binding and to rule that he was entitled to make use of the intellectual property specified in the agreement, including the "know-how" information withheld by FedPak.

The bankruptcy court conducted a trial June 3–4, 1991 and announced its findings of fact and conclusions of law on November 7, 1991, entering judgment in favor of Jones. The court concluded that FedPak (and not Jones) had breached the agreement, and that the agreement was valid and binding. Enforcing the contract, the court ruled that Jones was entitled to the distributorship territories in Maine and Texas as well as "the patent and know-how license to be an authorized manufacturer of frozen dessert machines designed by [FedPak]." FedPak appealed this order to the district court, but later voluntarily dismissed the appeal after determining that it was "in the best interests of all parties involved to resolve this matter outside the judicial system."

On January 16, 1992, with the authorization of the bankruptcy court, FedPak transferred all of its intellectual property rights in the FedPak frozen dessert machines to Polar Express Systems International, Inc. ("Polar Express"), in exchange for royalty payments to the bankruptcy estate.[4]

More than two years later, in February of 1994 (at the behest of Polar Express), Fed-Pak filed a motion with the bankruptcy court seeking clarification of the court's 1991 findings of fact and conclusions of law regarding the dispute between FedPak and Jones.[5] According to FedPak, the respective intellectual property rights of Jones and Polar Express were unclear because the bankruptcy court's 1991 order had failed to resolve matters such as (1) the extent of Jones's entitlement to certain technological enhancements and patent improvements made by FedPak (and Polar Express) subsequent to FedPak's filing for bankruptcy, and (2) whether Jones's distributorships in Maine and Texas were intended to be exclusive under the July 1990 agreement. The bankruptcy court granted FedPak's motion on March 1, 1994, issuing the order that is the subject of this appeal. The court's order: (1) limited Jones's intellectual property rights under the agreement to the single patent and related know-how in existence at the time FedPak filed for bankruptcy, and (2) provided that the distributorships in Maine and Texas were nonexclusive. Jones appealed this ruling to the district court.

On January 10, 1995, following extensive briefing of the issues by FedPak and Jones, the district court vacated the bankruptcy court's clarification order for want of subject matter jurisdiction. The district court held that FedPak, having sold its intellectual property interest in the frozen dessert machines to Polar Express in early 1992, lacked standing to seek the clarification order from

3. Jones alleged that at the time of the agreement, he paid $85,000 "cash up front" as "partial consideration" for the 20 state-of-the-art machines specified in the agreement. He further claimed that: (1) FedPak failed to meet the delivery schedule set forth in the agreement (by August 15, 1990), and (2) the machines finally delivered to him were "older models, used machines, were missing vital operating parts, were shoddy

and were not commercially fit for the[ir] intended purpose."

4. Polar Express acquired the intellectual property rights of FedPak subject to the rights of Jones under the July 1990 licensing agreement.

5. FedPak sought this order pursuant to 11 U.S.C. § 105 and Bankr.Rule 3008.

the bankruptcy court in 1994. FedPak appeals the January 10, 1995 order and asks this court either to affirm the bankruptcy court's clarification order or to remand the case for further proceedings.

### C. Postscript: Bankruptcy Court Litigation Brought By Polar Express

■ On March 31, 1995, after FedPak had filed this appeal, Polar Express instituted an adversary proceeding in the bankruptcy court, joining FedPak and Jones as defendants. Polar Express requested a declaratory judgment determining the respective rights of itself and Jones in the intellectual property. Jones filed a motion to dismiss, arguing that Polar Express's lawsuit was not a proceeding "related to" a case under Title 11 because the bankruptcy estate had no interest in a controversy that involved Jones and Polar Express, not FedPak (the debtor). On July 31, 1995, the bankruptcy judge granted Jones's motion to dismiss.[6]

## II. ISSUES

Although the underlying facts and procedural history of this case are somewhat complex, the sole legal issue in this appeal is relatively straightforward. The question presented—"Did the bankruptcy court have jurisdiction over the proceeding initiated by FedPak in 1994?"—may be analyzed in one of two ways. The district court approached this question by inquiring whether FedPak had standing to seek the clarification order, i.e., whether FedPak was "entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). If FedPak lacked standing to bring the proceeding, then there was no justiciable controversy and the bankruptcy court lacked jurisdiction as a matter of constitutional law. U.S. Const. art III; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

An alternative approach to the question presented in this appeal is to ascertain whether the proceeding initiated by FedPak fell within the statutory grant of jurisdiction to the bankruptcy courts under sections 157(a) and 1334(b) of Title 28, which empower a bankruptcy court to entertain proceedings "arising in," "arising under," or "related to" a case under Title 11 of the United States Code.

## III. DISCUSSION

### A. Standard of Review

■ Appellate review of a bankruptcy court's factual findings is for clear error, while review of its legal conclusions is plenary. *Matter of Yonikus*, 996 F.2d 866, 868 (7th Cir.1993) (both the district court and the court of appeals apply the same standard of review). Whether FedPak had standing to seek the clarification order from the bankruptcy court is a question of federal statutory and constitutional law that we review *de novo. Indemnified Capital Inv. v. R.J. O'Brien & Assoc.*, 12 F.3d 1406, 1409 (7th Cir.1993).

### B. Jurisdiction of the Bankruptcy Court

#### 1. The Constitutional Requirement of Standing

■ The requirement of standing is both a "constitutional limitation[ ] on federal-court jurisdiction and [a] prudential limitation[ ] on its exercise." *Warth*, 422 U.S. at 498, 95 S.Ct. at 2205; *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136. The United States Constitution restricts the jurisdiction of the federal courts to actual controversies in which the litigants have a personal stake. U.S. Const. art. III § 2; *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir.1994). A bankruptcy court, like any other federal court, lacks the constitutional power to render advisory opinions or to decide "abstract, academic, or

---

6. Jones argues that the July 31, 1995 order of the bankruptcy court (which was not appealed) is "preclusive of the issues before this Court." We do not agree and deny Jones's motion to dismiss the appeal. The fact that the bankruptcy court (correctly or incorrectly) dismissed the Polar Express proceeding for lack of subject matter jurisdiction has no preclusive effect on this appeal, which involves the jurisdiction of the bankruptcy court over a separate and distinct proceeding brought by FedPak.

hypothetical questions." *In re Inn on the Bay, Ltd.*, 154 B.R. 364, 367 (Bankr.S.D.Fla. 1993). In addition to being a constitutional imperative, the standing requirement enhances the effectiveness of the judicial process. As the United States Supreme Court has observed, requiring the parties in a lawsuit to have "a personal stake in the outcome of [a] controversy" ensures a "concrete adverseness" that "sharpens the presentation of issues upon which the court so largely depends ... [.]" *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

Does FedPak have standing to seek a clarification order? According to the Supreme Court, standing has three components:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely ... that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560–61, 112 S.Ct. at 2136 (quotations and citations omitted). Obviously, FedPak's standing (or lack thereof) turns on the "injury in fact" element. FedPak argues that it does have an interest in a judicial determination of the respective rights of Jones and Polar Express, and that this interest is sufficient to confer standing *even though it no longer owns any intellectual property rights in the frozen dessert machines*. Specifically, FedPak maintains that it has an interest in the issuance of a clarification order because:

(1) Uncertainty surrounding Jones's intellectual property rights could lead Polar Express to cease making royalty payments (described in FedPak's brief as the "main source of income to the estate");

(2) Jones could owe payments to the bankruptcy estate pursuant to the July 1990 agreement if he manufactured and sold FedPak machines; and

(3) Jones might have a claim against the bankruptcy estate if FedPak and Polar Express failed to provide him with the "know-how" information to which he is entitled under the November 7, 1991 judgment.

■ We agree with the appellee that these propositions are "hypothetical and unsupported by the record." Consequently, FedPak has failed to establish the "injury in fact" element of standing, which requires an "invasion of a legally-protected interest" that is "concrete and particularized" *and* "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136.

If we uphold the district court's vacation of the clarification order and Polar Express becomes anxious about its rights vis a vis Jones, it may sue Jones directly, or it may opt to modify or rescind its purchase of FedPak's interest in the machines. If it chooses the latter course, the bankruptcy court would have jurisdiction because it authorized the sale in the first place and the matter would therefore be "related to" the bankruptcy proceeding (see discussion of bankruptcy court's statutory jurisdiction *infra*). However, the record does not reflect that Polar Express has instituted any such proceedings, and, as of the filing of this appeal, Polar Express has continued to make payments. We therefore view with skepticism the claim that payments to the bankruptcy estate are in peril.

Similarly, there is no basis for suggesting that Jones is obligated to make payments to the bankruptcy estate pursuant to the July 1990 agreement because there is no evidence that he has manufactured any FedPak machines. If Jones manufactured any such machines *after* the sale to Polar Express, then of course any payments for those units belong to Polar Express and not to FedPak. If Jones manufactured any machines *prior* to the sale, then FedPak is indeed entitled to payment under the July 1990 agreement, but presumably could seek reimbursement in the bankruptcy court without seeking a broad clarification order.

Finally, although FedPak insists that a clarification order is necessary because it is potentially liable to Jones for failure to provide the "know-how" information specified in

the July 1990 agreement, we note that Jones has not asserted this claim and, in his appellate brief, explicitly "waives any right to demand that FedPak or Polar [Express] turn over any additional "know-how" or other intellectual property."

In summary, FedPak lacks standing to seek a clarification order from the bankruptcy court because (1) it no longer owns any intellectual property rights in the frozen dessert machines, and (2) it can assert only a remote and unsubstantiated interest in a judicial pronouncement concerning the respective rights of Jones and Polar Express in those machines. The rights of *Polar Express* and *Jones* may in fact be uncertain, ambiguous and in need of clarification. However, this does not mean that *FedPak* has standing to ask for a clarification. At this juncture, we believe that FedPak's interest in a clarification order can only be described as "conjectural or hypothetical" and not "actual or imminent." *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136. Because FedPak lacks standing, there is no justiciable controversy and the bankruptcy court, under Article III of the Constitution, is without jurisdiction to issue a clarification order.

### 2. *"Related To" Jurisdiction Under 28 U.S.C. §§ 157(a) and 1334(b)*

■ Another way of analyzing the issue presented in this appeal is not to focus on the constitutional requirement of standing, but to consider the scope of the bankruptcy court's jurisdiction under the federal statutes conferring such jurisdiction. As the U.S. Supreme Court explained recently, "[t]he jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in and limited by statute." *Celotex Corp. v. Edwards,* —— U.S. ——, ——, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995).

■ We begin with the bankruptcy jurisdiction of the district courts, which extends to "all civil proceedings arising under title 11, or arising in *or related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). Bankruptcy judges "constitute a unit of the district court," 28 U.S.C. § 151, and the district court may refer to them "any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a). The jurisdiction of the bankruptcy courts is thus "derivative" because it flows from the statutory grant of jurisdiction to the district courts. *In re K & L, Ltd.,* 741 F.2d 1023, 1028 (7th Cir.1984). To summarize, this jurisdiction includes the power to adjudicate proceedings "arising in," "arising under," or "related to" a case under title 11. *Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 161 (7th Cir.1994).

■ Whether FedPak's seeking of a clarification order falls within the jurisdiction of the bankruptcy court depends in part upon how one interprets the "related to" language in 28 U.S.C. §§ 157(a) and 1334(b).[7] The circuits are split on how best to interpret this statutory language. Michael L. Cook, *Overview of Bankruptcy Procedure: Jurisdiction, Venue and Appeals,* Practising Law Institute (April–May 1995); *Celotex,* —— U.S. at —— n. 6, 115 S.Ct. at 1499 n. 6. Some courts have adopted a sweeping test which holds that whenever a proceeding *"could conceivably have any effect on the* [bankruptcy] *estate,"* it is "related to" a case under title 11 and the bankruptcy court has jurisdiction. *See, e.g., Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984) (emphasis in original).[8]

This circuit has articulated a more limited and, we believe, more helpful definition of the bankruptcy court's "related to" jurisdiction. Our precedents hold that "[a] case is 'related' to a bankruptcy when the dispute 'affects the amount of property for distribution [i.e., the

---

7. For reasons discussed below, we believe that there was only a remote connection between FedPak's request for a clarification order and the administration of the bankruptcy estate. Therefore, if the bankruptcy court had jurisdiction at all, it was by virtue of the "related to" language quoted above and not the narrower "arising in" or "arising under" language.

8. While the United States Supreme Court appears to favor a broad interpretation, it has not mandated such an approach. *Celotex,* —— U.S. at ——, 115 S.Ct. at 1499. Indeed, the Court has recently acknowledged that "a bankruptcy court's 'related to' jurisdiction cannot be limitless." *Id.*

debtor's estate] or the allocation of property among creditors.' " *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir.), *cert. denied*, 504 U.S. 986, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992) (quoting *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987)). As we explained recently:

> [T]he ['related to'] language should not be read ... broadly. [It] is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, *claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others* but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum.

*Zerand–Bernal*, 23 F.3d at 161 (emphasis added, citation omitted).

We have interpreted "related to" jurisdiction narrowly "out of respect for Article III" (see discussion *supra*) as well as to prevent the expansion of federal jurisdiction over disputes that are best resolved by the state courts. *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir.1989); *see also In re Kubly*, 818 F.2d 643, 645 (7th Cir.1987) (the "limited jurisdiction" of the bankruptcy court "may not be enlarged by the judiciary because the judge believes it wise to resolve the dispute."). Additionally, we believe that common sense cautions against an open-ended interpretation of the "related to" statutory language "in a universe where everything is related to everything else." Gerald T. Dunne, *The Bottomless Pit of Bankruptcy Jurisdiction*, 112 Banking L.J. 957 (Nov.–Dec.1995).

■ Does FedPak's request for a clarification order fall within the limited jurisdiction of a bankruptcy court to adjudicate matters "related to" a Title 11 case? In other words, would an order [9] clarifying the respective intellectual property rights of Jones and Polar Express "affect[ ] the amount of property for distribution or the allocation of property among creditors[?]" *Xonics*, 813 F.2d at 131. In our opinion, the answer is "No." As previously discussed, FedPak's assertions

about its need for (or interest in) a clarification order are at best speculative and hypothetical. It is by no means certain that an order clarifying the respective rights of Polar Express and Jones will have *any* effect whatsoever on the bankruptcy estate. FedPak argues, *inter alia*, that a clarification order would put Polar Express at ease concerning its rights in the frozen dessert machines and thus protect the flow of royalty payments from Polar Express to the bankruptcy estate. However, as discussed above, this record is barren of any evidence that Polar Express is so troubled by the ambiguity of the current situation that it will cease making payments to the bankruptcy estate.

■ More fundamentally, we do not agree that the bankruptcy court has "related to" jurisdiction because FedPak seeks a determination of the rights of Jones and Polar Express in property that "passed outside of [the] court's control when the property was sold [in 1992.]" *In re Edwards*, 962 F.2d 641, 643 (7th Cir.1992). "[A] bankruptcy court has jurisdiction over property owned by or in the actual or constructive possession of the debtor." *In re K & L*, 741 F.2d at 1029 (citation omitted). However, as this court has observed on more than one occasion, "[bankruptcy court] jurisdiction does not follow ... property [that is sold]"; rather, that jurisdiction "lapses when property leaves the estate." *Xonics*, 813 F.2d at 131; *Edwards*, 962 F.2d at 643; *In re Chicago, Rock Island and Pacific Railroad Co.*, 794 F.2d 1182, 1186 (7th Cir.1986). FedPak transferred all of its rights in the frozen dessert machines to Polar Express in 1992, pursuant to an order of the bankruptcy court, and the terms of that sale "are inviolate in the absence of fraud or collusion." *Chicago, Rock Island and Pacific R.R.*, 794 F.2d at 1186 (citations omitted). "Since the property [is] no longer part of the bankrupt[cy] estate and since a determination of rights to it would not affect any dispute by creditors over property that was part of the ... estate, the bankruptcy court [has] no

---

9. Either the order actually granted by the bankruptcy court or, presumably, a hypothetical order

that might be issued if we were to remand this case.

jurisdiction to determine rights to the property." *Edwards,* 962 F.2d at 643.

## CONCLUSION

 "A court cannot write its own jurisdictional ticket," *Zerand–Bernal,* 23 F.3d at 164, but must act within the confines of constitutional as well as statutory limits on its jurisdiction. We hold that the bankruptcy judge in this case exceeded the bounds of his jurisdiction when, at FedPak's insistence, he asserted the power to "clarify" the respective rights of Polar Express and Jones in property that no longer belonged to the bankruptcy estate.

We hold that the bankruptcy court lacked jurisdiction to issue the clarification order because (1) FedPak did not have the constitutionally-required standing to seek the order, and (2) the order sought by FedPak did not fall within the scope of the bankruptcy court's "related to" jurisdiction under 28 U.S.C. §§ 157(a) and 1334(b). Because we hold that the bankruptcy court lacked jurisdiction, we need not address the merits of the clarification order, or remand the case for further proceedings. The district court's order vacating the bankruptcy court's clarification order is AFFIRMED.