**In re June Marie HEATH, Debtor.**

**UNITED STATES POSTAL SERVICE, Appellant,**

v.

**Joseph M. BLACK, Jr., Trustee, Appellee.**

No. NA 95–78–C–B/H.
Bankruptcy No. 93–91138–BHL–13.
Adversary No. 95–9003.

United States District Court,
S.D. Indiana,
New Albany Division.

July 15, 1996.

setoff expenses were not valid. 3 Ind.App. at 452, 29 N.E. 944.

Jeffrey L. Hunter, Assistant United States Attorney, Indianapolis, IN, for Appellant.

Joseph M. Black, Jr., Trustee, Rothring Lambring & Black, Seymour, IN, pro se.

## ENTRY AND ORDER

BARKER, Chief Judge.

This is an appeal which derives from a Chapter 13 Bankruptcy petition filed by debtor June Marie Heath ("Debtor"). The actual decision from which an appeal has been taken is the judgment of the Bankruptcy Court entered on April 26, 1995. In that decision, it was concluded that the Postal Service (the "Postal Service"), which is the debtor's employer and which assessed a fee

for its role in forwarding periodic sums from the debtor's income to the Bankruptcy Trustee, had "improperly assessed and collected a processing fee in connection with the Take Out Order." The Postal Service was therefore directed to return the money which had been collected. The Postal Service has appealed, with the Bankruptcy Court's decision being defended by the Chapter 13 Trustee.

The ultimate issue for resolution is whether the Chapter 13 Trustee was entitled to challenge the assessment by the Postal Service and, if so, whether the assessment was contrary to a portion of Title 11 of the United States Code. Resolution of this issue requires consideration of both statutory authority and case-specific language. The case has been briefed and is now fully at issue.[1]

## I. Background

The Debtor submitted, and the Bankruptcy Court approved, the Debtor's Chapter 13 Plan (the "plan"). Joseph M. Black, Jr., served as the Chapter 13 Trustee (the "Trustee"). Black was obligated and authorized to perform the functions set forth in 11 U.S.C. § 1302 (11 U.S.C. § 101 *et seq.* is hereinafter sometimes referred to as the "Bankruptcy Code"). The plan provided for periodic payments to be made by the Debtor, or her employer from her regular income, to the Trustee. The purpose of this was to enable the Trustee to make payments to unsecured creditors and others, as provided for in the plan. An Order Confirming Plan was entered on September 24, 1993. That order provided in pertinent part:

> 4. The Debtor's income and other assets including accounts receivables remain estate property to the extent necessary to fulfill the plan.

Amendments to the plan were approved on February 2, 1994 and February 28, 1994, but did not alter the definition of estate property quoted above.

A "Take Out Order" was entered by the Bankruptcy Court on December 8, 1994, directing the Postal Service to pay over $75.77 of the Debtor's earnings to the Trustee bi-

weekly. This Take Out Order was contemplated by the Chapter 13 Plan. The Postal Service has, at all times, complied with the Take Out Order's directive.

The Postal Service charges a fee for all matters processed under 5 U.S.C. § 5520a, which provides that the administrative costs in executing a garnishment action may be added to the garnishment, and costs may be recovered as offsetting collections. 5 U.S.C. § 5520a(j)(2). It is apparently a one-time fee. The statute further provides that

> (3) "legal process" means any writ, order, summons, or other similar process in the nature of a garnishment, that—
>
> > (A) is issued by a court of competent jurisdiction . . . ;
> >
> > and
> >
> > (B) orders the employing agency of such employee to withhold an amount from the pay of such employee, and make a payment of such withholding to another person, for a specifically described satisfaction of a legal debt of the employee, or recovery of attorneys' fees, interest, or court costs. . . .

5 U.S.C. § 5520a(a)(3). The Postal Service determined that the Take Out Order fell within the scope of 5 U.S.C. § 5520a(a)(3), and subsequently withheld $50.00 from the Debtor's pay to offset its administrative costs. The amount withheld for this purpose did not reduce any bi-weekly payment made to the Trustee.

## II. Issues

This appeal presents a number of issues:

1. Whether the Bankruptcy Court had jurisdiction to hear the adversary proceeding.

2. Whether the Trustee had standing to initiate or pursue the adversary action.

3. Whether the bankruptcy court erred in ordering return of the $50.00 fee at issue.

4. Whether the bankruptcy court erred in its determination that the Postal Ser-

---

1. The Postal Service's Motion for Leave to Designate and Include Additional Items for Record on Appeal or Supplement the Said Record, filed on August 14, 1995, is **granted**, and the items appended to that motion are now before the court.

vice could not charge a processing fee under 5 U.S.C. § 5520a directly to the Debtor.

5. Whether the bankruptcy court erred in its determination that the Postal Service could not charge a processing fee under 5 U.S.C. § 5520a directly to the Debtor, but was required to file an administrative claim requesting payment of such fee.

## III. Discussion

The first issue, whether the Bankruptcy Court had jurisdiction to hear the adversary action, is interwoven with the resolution of whether the Trustee had standing to bring the action initially, for if he had no standing, there was no justiciable controversy, and the Bankruptcy Court lacked jurisdiction to decide the matter. *In re FedPak Systems, Inc.*, 80 F.3d 207, 211 (7th Cir.1996). Hence, discussion of the jurisdictional question will be deferred until later in this Entry.

A. Standing

■ The duties of the Chapter 13 Trustee are set forth in 11 U.S.C. § 1302. This statute incorporates, *inter alia*, 11 U.S.C. § 704(2), (3), (4), (5), (6), (7) and (9). It is inarguable that none of the relevant statutory provisions specifically authorize the Trustee to bring an adversary action, post-confirmation, designed to force a creditor to turn over property to the debtor.

■ The jurisdiction of federal courts, including the Bankruptcy Court, is restricted "to actual controversies in which the litigants have a personal stake." *FedPak*, 80 F.3d at 211 (citing U.S. Const. Art. III § 2; *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir.1994)). The issue of "personal stake" for the Trustee, hence the *sine qua non* for his standing in a particular action, is determined by reference to three components:

First, the plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must be likely ... that the injury will be redressed by a favorable decision.

*FedPak*, 80 F.3d at 212 (quotations and citations omitted).

The Trustee argues that he had standing to challenge the Postal Service's collection of an administrative fee based on several circumstances: (1) his statutory power under 11 U.S.C. § 1302; (2) the requirement that he give prior approval for certain consumer debts under 11 U.S.C. § 1305; (3) his inherent power to review and object to claims pursuant to 11 U.S.C. § 704(a)(5); and (4) based on the broad equities of the case, asserting "[m]any courts have allowed the Trustee to act on behalf of the Debtor."

Courts that have examined the issue look to see whether the actions of the trustee are encompassed within, or closely related to, the trustee's statutory powers. *See, Matter of Maddox*, 15 F.3d 1347, 1353–56 (5th Cir. 1994); *In re Kennedy*, 139 B.R. 389, 390–92 (Bankr.N.D.Miss.1992); *In re Ciavarella*, 28 B.R. 823, 825 (Bankr.S.D.N.Y.1983). A Chapter 13 trustee has been found to have standing in certain instances where as a result of bringing an adversary action, the Trustee could potentially bring more assets into the estate and consequently increase payments available to unsecured creditors. *See, e.g., Matter of Maddox*, 15 F.3d at 1353–56; *In re Kennedy*, 139 B.R. at 390–92. In the case at bar, the ruling of the Bankruptcy Court resulted in a transfer of money from the Postal Service to the Debtor; no potential for increased payment to unsecured creditors was apparent either when the action was brought, or ultimately.

The Bankruptcy Court found that the Trustee had standing to bring the case pursuant to § 1302(b)(5), which provides that the Trustee bears the responsibility for ensuring that the Debtor commences making timely payments under the plan, and under § 1302(b)(4) which provides that the Trustee shall "advise, ... and assist the debtor in performance under the plan."

This issue, as well as some of the others presented in this appeal, is one of first impression. To the extent there is no case or statutory law conferring standing on the

302

Trustee in this instance, none apparently exists.

One of the few cases discussing the ability of a Chapter 13 Trustee to bring an adversary action not authorized by statute is *In re Johnson (Boyajian v. Assocs. Financial Service Co. of Rhode Island)*, 13 B.R. 263 (Bankr.D.R.I.1981). *Johnson* involved a complaint filed by the Chapter 13 Trustee alleging violation of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601, *et seq.* (Truth in Lending Act) and Regulation Z, 12 C.F.R. §§ 226.1, *et seq.* The defendant creditor argued that Bankruptcy Code § 1302(b)(3) limited the trustee's authority to advise and assist the debtors in performance of the repayment plan to matters other than legal, and that the action was, consequently, unauthorized. The court held:

> The Defendant's reliance on § 1302(b)(3) is totally misplaced. The Trustee in this case is not providing the Debtors with advice on legal matters, nor is he representing the Debtors, but rather, in accordance with his legal duty to creditors, is pursuing a cause of action, title to which vested in the Trustee pursuant to Article IV of the Debtors' Plan for Repayment, and Code § 1322(b)(9).

*Johnson*, 13 B.R. at 264. The holding hinged primarily on a provision of the plan specifically dealing with property of the estate. The plan provided that property of the estate vested in the trustee until the case was closed or otherwise disposed of. In the case at bar, the plan provides that assets only remain estate property "to the extent necessary to fulfill the plan." Under the reasoning of *Johnson*, this language is sufficient to deprive the Trustee of standing.

The lack of a personal stake in the outcome and the lack of statutory authority deprive the Trustee of standing. As the *FedPak* court stated, "[t]he rights of [the parties] may in fact be uncertain, ambiguous and in need of clarification. However, this does not mean that [the plaintiff] has standing to ask for a clarification." *FedPak*, 80

F.3d at 213. The absence of standing deprives the Bankruptcy Court of jurisdiction.

**B. Jurisdiction of the Bankruptcy Court**

■ Another way to analyze the propriety of the Bankruptcy Court's decision is to focus on the court's jurisdiction pursuant to federal statutes. The Bankruptcy Court determined that it had jurisdiction over the case pursuant to 28 U.S.C. §§ 157 and 1334, and the Standing Order of the United States District Court for the Southern District of Indiana effective July 11, 1984.

■ District courts have jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). District courts may refer to bankruptcy judges "any or all proceedings arising under title 11 or arising in or *related to* a case under title 11." 28 U.S.C. §§ 151, 157(a) (emphasis added). "A case is 'related to' a bankruptcy when the dispute 'affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors.'" *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir.), *cert. denied*, 504 U.S. 986, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992) (*quoting In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987)). The "related to" requirement for jurisdiction is narrowly construed. *FedPak*, 80 F.3d at 214. The Bankruptcy Court's limited jurisdiction "may not be enlarged by the judiciary because the judge believes it wise to resolve the dispute." *In re Kubly*, 818 F.2d 643, 645 (7th Cir.1987).

The analysis can properly terminate at this point, because the $50.00 withheld by the Postal Service did not reduce any payment to the Trustee, hence it did not affect the amount of property available for distribution.[2] The Trustee's assertions of his standing are not persuasive, because they are inadequate to overcome the "related to" jurisdictional hurdle.

Moreover, the Bankruptcy Court lacked jurisdiction over this property that was out-

**2.** The jurisdictional issue which the court finds dispositive does not turn on whether the Bankruptcy Court's Take Out Order was in the nature of garnishment as that phrase is used in 5 U.S.C.

§ 5520a. For purposes of the court's discussion, therefore, it may be assumed in this case that it was.

side the court's control. The Bankruptcy Court has authority to hear and determine "core proceedings" (28 U.S.C. § 157(b)(2))[3] or matters "related to a case under" the Bankruptcy Code (28 U.S.C. § 157(c)(1)). In addition, 28 U.S.C. § 1334(e) provides for jurisdiction over "all property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." The Bankruptcy Court determined that the case was a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), in this case one related to "matters concerning the administration of the estate."

■ Once property ceases to be part of the bankrupt estate, the Bankruptcy Court loses jurisdiction. *Matter of Edwards*, 962 F.2d 641, 643 (7th Cir.1992) ("Since the property was no longer part of the bankrupt estate and since a determination of rights to it would not affect any dispute by creditors over property that was part of the bankrupt estate, the Bankruptcy Court had no jurisdiction to determine rights to the property.") (*citing, In re Kubly*, 818 F.2d 643 (7th Cir. 1987)); *In re Xonics*, 813 F.2d 127, 131–32 (7th Cir.1987); *In re Chicago, Rock Island & Pac. R.R.*, 794 F.2d 1182, 1186–87 (7th Cir. 1986).

■ In this case, it was clearly the post-confirmation earnings of the Debtor which were seized by the Postal Service. Whether post-confirmation earnings of the Debtor remain property of the estate is an issue which has not yet been finally decided in this Circuit and is an issue over which courts throughout the country are divided.

The positions of the various courts can essentially be divided along four theories:

1. The first line of cases holds that upon confirmation of a Chapter 13 plan, absent a contrary provision in the plan or order of confirmation, all property revests in the debtor and the estate terminates. Consequently, post-petition creditors are free to pursue these funds to satisfy post-petition debts. *See In re Petruccelli*, 113 B.R. 5 (Bankr.S.D.Cal.1990); *In re Dickey*, 64 B.R. 3, 4 (Bankr.E.D.Va.1985); *In re Mason*, 45 B.R. 498 (Bankr.Ore.1984), *aff'd*, 51 B.R. 548 (D.Ore.1985); *In re Stark*, 8 B.R. 233 (Bankr.N.D.Oh.1981).

2. The second line of cases holds that wages earned by a debtor post-petition remain property of the estate and the automatic stay applies to fully protect these post-petition earnings. *In re Taylor*, 151 B.R. 772, 775 (Bankr.N.D.Miss.1993); *In re Smith*, 104 B.R. 695, 699 (E.D.Pa.1989). *See also In re Aneiro*, 72 B.R. 424 (Bankr. S.D.Cal.1987) (the revesting of property in the debtor upon confirmation of a Chapter 13 case does not affect the existence of the estate and does not transform property of the estate into property of the debtor).

3. The third line of cases holds that post-confirmation earnings which are not committed to funding the plan are not part of the estate. *In re Markowicz*, 150 B.R. 461, 462 (Bankr.D.Nev.1993); *In re McKnight*, 136 B.R. 891 (Bankr.S.D.Ga. 1992); *In re Ziegler*, 136 B.R. 497 (Bankr. N.D.Ill.1992); *In re Root*, 61 B.R. 984 (Bankr.D.Colo.1986). *See also Security Bank of Marshalltown v. Neiman*, 1 F.3d 687 (8th Cir.1993) (property and future earnings of the debtor necessary for fulfillment of the Chapter 13 plan remain property of the estate after confirmation notwithstanding vesting of property in the debtor under § 1327(b)); *In re Thompson*, 142 B.R. 961 (Bankr.D.Colo.1992) (pursuant to §§ 541, 1306 and 1327(b), postpetition earnings revest in the debtor at confirmation except to the extent the plan or order of confirmation requires future earnings be paid to the Trustee. Postconfir-

---

**3.** 28 U.S.C. § 157(b) provides, in pertinent part, that

    (2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

      \*     \*     \*     \*     \*     \*

(E) orders to turn over property of the estate;

mation earnings which are paid to the Chapter 13 trustee remain property of the estate; all other property vests in the debtor).

4. A fourth line of cases essentially holds that confirmation does not terminate the automatic stay, although the cases are not in agreement as to why or to what extent the stay continues to apply. *In re Osei*, 90 B.R. 910, 912 (N.D.Ill 1988) (citing *Mason* with approval, but adopting "the pragmatic approach adopted in *Clark[e]*," and holding that despite termination of the estate, a postpetition creditor has the burden to demonstrate cause for relief from the stay to pursue debtor's postpetition wages); *In re Littke*, 105 B.R. 905 (Bankr.N.D.Ind. 1989) (automatic stay continues in effect even if the estate ceases to exist at confirmation); *In re Clark*, 71 B.R. 747, 750 (Bankr.E.D.Pa.1987) (notwithstanding the fact that confirmation vests property of the estate in the debtor, estate does not cease to exist and property which vested is still subject to stay, although creditor "should have a relatively slight burden to overcome to obtain relief from the automatic stay prospectively.").

The court is persuaded by the reasoning of *Root* and its progeny. The first line of cases, those which hold that upon confirmation of the Chapter 13 plan all property of the estate vests in the debtor and the estate ceases to exist, lacks logic. As *Root* pointed out:

If there is no existing estate upon confirmation, then what does the Chapter 13 Trustee administer? If there is no estate over which the Chapter 13 Trustee has control, then that Trustee is nothing more than an officious intermeddler. Even 11 U.S.C. § 704(9), (made applicable to Chapter 13 Trustees by 11 U.S.C. § 1302(b)(1)), provides that the Trustee shall ". . . make a final report and file a final account of the administration of the estate [emphasis added] with the court." There must be an "estate" upon and after confirmation, and that estate consists of the property and future earnings of the debtor dedicated to fulfillment of the Chapter 13 Plan.

*Root*, 61 B.R. at 985.

The difficulty, in part, lies in interpreting two seemingly contradictory provisions of the Bankruptcy Code. Section 1306(a)(2) provides:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title [11]— . . .

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7, 11, or 12 of this title whichever occurs first.

11 U.S.C. § 1327(b) provides:

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

These two statutes can be read to be contradictory, as the split of authority makes clear. To the extent the statutes deal with the same subject matter, they must be read *pari materia* and harmonized if possible. *In re Johnson*, 787 F.2d 1179, 1181 (7th Cir. 1986). The most expansive analysis of the interworking of these two statutes was undertaken by the *Ziegler* court:

The relevant query is whether the actions taken were a proscribed attempt to collect on a claim from a person or res protected by section 362(a). On the one hand, if there never is any property of the Chapter 13 estate after confirmation, then what is there for the trustee to collect from the debtor, either directly or otherwise, and then disburse to and for the benefit of the creditors under the confirmed plan? Trustees normally only administer property of the trust estate with which they are entrusted. On the other hand, if they do not receive and disburse property of the bankruptcy estate in trust, why are they needed or called trustees? After all, section 1322(a)(1) contemplates someone to exercise supervision and control over such property, and who better than the Chapter 13 trustee with regard to property of the estate. It is more logical to conclude that the payments made by or on behalf of the Debtors needed to fund the plan and received or to be received by the Trustee are property of the estate. The remaining

wages of the Debtor William Ronald Ziegler remain his individual property. This result is in accord with the view in *Root* and *Clark.*

\* \* \* \* \* \*

Rather, it is more logical to conclude that those earnings from a debtor's services created post-confirmation needed or committed to fund the confirmed plan, become property of the estate when they come into being to be later paid to the trustee, and are protected by the stay of section 362(a)(3) and (a)(4) against post-petition claims. The remainder of the earnings are more properly characterized as the debtor's property and not automatically protected by the automatic stay from post-petition claims. To hold otherwise could have the unfair and inequitable polar results in a plan such as this to either fully insulate such future acquired interests in property from legitimate post-petition claims not provided for in the plan, or allow post-confirmation claimants to proceed against the funds or property needed to consummate the plan for the benefit of the Debtors' other pre-petition creditors. The result of the Court's construction providing a middle rather than an all or nothing approach, is consistent with its earlier discussion in [*In re*] *Price,* [130 B.R. 259 (N.D.Ill.1991)], Judge Rovner's cited dictum [contained in *Price*], and is buttressed by section 1322(a)(1). That section requires that the plan must "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). Construed in this fashion, the seeming conflict between sections 1327(b) and 1306(a)(2) is resolved.

*Ziegler,* 136 B.R. at 501–502.

Only those post-petition earnings which are devoted to plan payments constitute property of the estate. Consequently, only that portion of earnings is protected by the automatic stay of 11 U.S.C. § 362(a).[4] The *Ziegler* court, in discussing application of the automatic stay to postpetition creditors noted that:

subsections 362(a)(1), (2), (5), (6) and (7) pertain to stays of actions relating only to pre-petition claims. Both the Debtors and the Respondents also correctly observe that the provisions of section 362(a)(3) and (a)(4) are not restricted to pre-petition claims. However, same stay only actions against property of the estate and do not bar actions against the Debtors or property of the Debtors to recover post-petition claims.

*Ziegler,* 136 B.R. at 500.

In this case, the source of funds devoted to plan payments is clear. The funds came directly from the Postal Service, the Debtor's employer. Under this interpretation of the Bankruptcy Code and relevant law, portions of the Debtor's salary which are paid over to the Debtor, rather than the Trustee, are vested in the Debtor and are no longer property of the estate. Consequently, not only is the Bankruptcy Court without jurisdiction to

---

4. 11 U.S.C. § 362(a) operates as a stay of:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor **that was or could have been commenced before the commencement of the case** under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

\* \* \* \* \* \*

(3) any act to obtain possession of **property of the estate** or of property from the estate or to exercise control over property of the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

*Id.* (emphasis added).

The statute goes on to provide:
(1) the stay of an act against property of the estate under subsection (a) of this section **continues until such property is no longer property of the estate;** and
(2) the stay of any other act under subsection (a) of this section continues until the earliest of—
(A) the time the case is closed;
(B) the time the case is dismissed;
(C) if the case is a case under Chapter 7 of this title concerning an individual or a case under Chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.
11 U.S.C. § 362(c).

**306**

determine their appropriation, the Postal Service was not controlled by the provisions of the automatic stay. *Cf. Root,* 61 B.R. at 985.[5]

## IV. Conclusion

The claim made in the adversary action which underlies this appeal had nothing to do with the Debtor's bankruptcy, nothing to do with payments made under the plan and nothing to do with the bankruptcy estate. The Chapter 13 Trustee had no standing to bring an adversary case challenging the action of the Postal Service in withholding the $50.00 administrative fee because he had neither a personal stake in the outcome of the case, nor any statutory authority to bring such an action. This lack of standing deprived the Bankruptcy Court of jurisdiction to decide the controversy. Further, the debtor's plan in this instance provided its own definition to "property of the estate," which it was entitled to do pursuant to 11 U.S.C. § 1327(b). The definition was not one which made such "estate property" coterminous with the presumptive statutory definition under § 1306(a)(2). By qualifying property of the estate as encompassing only "income ... to the extent necessary to fulfill the plan," the plan in this case narrowed the available definition of estate property. This narrowed definition placed funds earned post-confirmation which were not used to fund the plan, including the $50.00 withheld by the Postal Service, outside the definition of estate property, hence outside of the Bankruptcy Court's jurisdiction to adjudicate. The foregoing analysis pretermits the necessity of a specific analysis of the third, fourth and fifth issues identified in Part II of this Entry.

Accordingly, the judgment of the Bankruptcy Court is **reversed,** and this cause is **remanded** to the Bankruptcy Court to be dismissed for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

---

**5.** Note that the automatic stay clearly applies to protect plan payments which the debtor, or in this case her employer, is required to pay. *Ziegler,* 136 B.R. at 501.