In re FORT WAYNE TELSAT,
INC., Debtor.

R. David Boyer, Trustee, Plaintiff

v.

James SIMON, et al., Defendants.

Bankruptcy No. 05–12177.
Adversary No. 07–1286.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 6, 2009.

Robert L. Nicholson, Beckman Lawson LLP, Fort Wayne, IN, for James Simon & JAS Partners

John Burns, Mark Werling, Baker & Daniels, Fort Wayne, IN, for Thomas Shoaff & William Millett.

### DECISION AND ORDER CONCERNING SUBJECT MATTER JURISDICTION

ROBERT E. GRANT, Bankruptcy Judge.

This adversary proceeding began with a relatively simple complaint for turnover

against James Simon and JAS Partners. The trustee claimed that Simon and JAS were in possession of FCC licenses which were property of the estate and asked for an order requiring them to deliver those licenses to him. Thomas Shoaff and William Millett sought to intervene in the trustee's litigation, claiming the licenses had been pledged for their benefit to secure their claims against the debtor. That motion became moot when the trustee filed an amended complaint naming them as defendants, in addition to bringing in new parties, William Cast, Fouad Halaby, the Willis Jesiek Estate and Wayne Shive. Like its predecessor, the amended complaint sought possession of the licenses and a determination of the parties' respective interests in them. It also added new claims seeking to determine the validity of what has been termed the "Scheumann Agreement" which is a pre-petition agreement between the debtor and the various defendants (or their predecessors in interest) by which the proceeds from an anticipated sale of the licenses were to be distributed. JAS and Simon then filed a cross-claim against the other defendants, seeking a determination of their claims against the estate, while Shoaff and Millett filed cross-claims against Simon and JAS, seeking a declaration, under various theories, and that they had an interest in the licenses Simon and JAS claimed belonged to them.

The trustee eventually settled with Simon and JAS. The essence of the settlement was an acknowledgment of who, as between JAS, Simon and the estate, owned which licenses, the sale of the licenses and a dismissal of the estate's pending claims against JAS and Simon. The settlement did not affect JAS and Simon's claims against the other defendants or involve their claims against Simon and JAS. The settlement was approved by the court, after a hearing at which it considered objections filed by Shoaff and Millett, with the proviso that the trustee interplead the non-estate portion of the sale proceeds with a court of appropriate jurisdiction in order to determine which of the competing claimants was entitled to them.

Although the original dispute involving the estate has been resolved through the trustee's settlement, the disputes between Simon and JAS and the other defendants continue. Since those disputes seemed to be little more than some type of conflict between creditors—conflicts which do not involve the estate—the court, on its own motion, scheduled a hearing to consider whether it has subject matter jurisdiction over them and invited the parties to submit briefs directed to the issue. That is the question now before it.

Jurisdiction is the power to decide; it must be conferred and not assumed. *In re Chicago, Rock Island and Pacific R.R. Co.,* 794 F.2d 1182, 1188 (7th Cir.1986). The jurisdiction exercised by bankruptcy courts is conferred by 28 U.S.C. § 1334.[1] In addition to having jurisdiction over the bankruptcy case itself, 28 U.S.C. § 1334(a), the court also has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.

---

1. Although bankruptcy jurisdiction is initially vested in the district courts, 28 U.S.C. § 157(a) allows the district courts to refer that jurisdiction to bankruptcy judges. Paragraphs (b) and (c) of § 157 then go on to describe how the bankruptcy judges are to exercise that jurisdiction. This makes the bankruptcy court's jurisdiction derivative of that given to the district court, *see, Matter of FedPak Systems, Inc.,* 80 F.3d 207, 213 (7th Cir.1996), and is the reason that some decisions talk about the bankruptcy court having jurisdiction under different parts of § 157(b) or § 157(c), rather than § 1334. *See e.g., Matter of Xonics,* 813 F.2d 127, 131 (7th Cir. 1987).

1334(b). The familiar litany, arising under, arising in, or related to, identifies the types of proceedings that collectively comprise the full scope of bankruptcy jurisdiction and divides that jurisdiction into three overlapping sets. The court's "arising under" jurisdiction consists of proceedings involving a cause of action created by the provisions of title 11. Its "arising in" jurisdiction involves the various administrative proceedings that, while not based on rights created by title 11, would have no existence outside of the bankruptcy case. The final and broadest aspect of bankruptcy jurisdiction is the "related to" jurisdiction. This consists of the various proceedings based upon non-bankruptcy law which will affect the amount of property available for distribution or its allocation among the debtor's creditors. *See, In re Spaulding,* 131 B.R. 84, 88 (N.D.Ill.1990).

Since the settlement of the trustee's original dispute with Simon and JAS over ownership of the licenses, the only remaining claims in this adversary proceedings involve the various cross-claims by and between Simon and JAS on the one hand and Shaoff and Millett and the other defendants on the other, as well as whatever scraps may still linger from the Trustee's request to determine the validity of the Scheumann Agreement—although that claim may very well be subsumed in the defendants' various cross-claims against one another. The remaining claims fall into three groups: (1) Simon and JAS have objected to the proofs of claim filed by the other defendants; (2) the court has been asked to determine the validity of and enforce the Scheumann Agreement; and finally (3) Shoaff and Millet want the court to recognize and enforce a lien upon the Simon and JAS licenses (or their proceeds) which was allegedly given to secure the debtor's obligations to Shoaff and Millett and/or Simon's and JAS's guarantee of those obligations.

■ Of the three remaining disputes, the first two are most easily addressed. An objection to a creditor's proof of claim is clearly within the scope of the bankruptcy court's jurisdiction and, as a proceeding which, although not based on rights created by title 11, would have no existence outside the bankruptcy, is probably best pigeonholed as part of the court's "arising in" jurisdiction. The various claims to determine the validity of and/or to enforce the Scheumann Agreement are also within the scope the court's jurisdiction. That agreement supposedly determined the distribution of the proceeds from a sale of the debtor's FCC licenses among the debtor's various creditors and seems to have characteristics of a subordination agreement. The Bankruptcy Code specifically recognizes the enforceability of subordination agreements at § 510(a), and at § 510(c) it recognizes the possibility that some claims may be subordinated to others for equitable reasons. 11 U.S.C. § 510. Accordingly, an action under § 510 seeking to equitably subordinate a particular creditor's claim or to enforce a subordination agreement comfortably fits within the court's jurisdiction. To the extent § 510 is seen as creating the basis for the action, it would come within the scope of the "arising under title 11" jurisdiction of § 1334(b). To the extent § 510 does not create the right but, instead, provides the vehicle by which a non-bankruptcy right of subordination may be enforced in a bankruptcy case, it would come within the scope of the "arising in ... a case under title 11" jurisdiction of § 1334(b). Either way, the court has jurisdiction.

■ Determining whether the court has jurisdiction over Shoaff and Millett's efforts to establish and/or enforce a lien upon Simon's and JAS's licenses is a bit more complicated. The only basis for the

court's authority to do so would be the "related to" jurisdiction of § 1334(b). The Seventh Circuit has adopted a much more limited approach to related to jurisdiction than that followed in other circuits.[2] *See, In re FedPak Systems, Inc.,* 80 F.3d 207, 213 (7th Cir.1996). A proceeding is related to a case under title 11 only when "it affects the amount of property available for distribution or the allocation of property among creditors." *Matter of Xonics,* 813 F.2d 127, 131 (7th Cir.1987). *See also, FedPak Systems,* 80 F.3d at 213–14 (7th Cir.1989); *Matter of Kubly,* 818 F.2d 643, 645 (7th Cir.1987). The Circuit favors this narrower approach "not only out of respect for Article III but also to preserve the jurisdiction of state courts...." *Home Insurance Co. v. Cooper,* 889 F.2d at 749. Additionally, in a universe where everything is related to everything else, common sense cautions against an open-ended interpretation of related to jurisdiction. *FedPak Systems,* 80 F.3d at 214.

 Even if a dispute initially comes within the scope of the court's related to jurisdiction, that jurisdiction does not last forever. It can lapse. Bankruptcy jurisdiction is designed to provide a single forum for dealing with all the claims to a debtor's assets and it extends no farther than that purpose. *Xonics,* 813 F.2d at 131. Once that purpose has been accomplished, the bankruptcy court's jurisdiction ends. *Chicago, Rock Island & Pacific R.R.,* 794 F.2d at 1186. *See also, In re Bass,* 171 F.3d 1016, 1022–26 (5th Cir. 1999); *In re Sieger,* 200 B.R. 636, 638–39

(Bankr.N.D.Ind.1996); *In re Import & Mini Car Parts, Ltd., Inc.,* 200 B.R. 857 (Bankr.N.D.Ind.1996), aff'd, 203 B.R. 124 (N.D.Ind.1996), aff'd, *Matter of Import & Mini Car Parts, Ltd., Inc.,* 97 F.3d 1454, 1996 WL 554450 (1996)(table). This is so even though other disputes may remain. *Xonics,* 813 F.2d at 131("That two creditors may have an internecine conflict is of no moment, once all disputes about their stakes in the bankrupt's property have been resolved."). The bankruptcy court's jurisdiction over competing claims to property ends with its control over that property. *Chicago, Rock Island & Pacific R.R.,* 794 F.2d at 1186.

In *Xonics* the court described a hypothetical dispute over which the court had and then lost jurisdiction.

Suppose A, B, and C claim interests in a pool of oil. If A is a bankrupt, the bankruptcy court could determine the interests of all three in the property under 28 U.S.C. § 157(b)(2) or § 157(c)(1), because only after identifying the "property" of the estate may the court apportion that property among creditors. But if the estate should disclaim any interest in the pool, only the dispute between B and C would remain. The resolution of that dispute would not affect the creditors of the bankrupt, and there would be no source of jurisdiction. That B and C might also be creditors of the bankrupt would not enlarge the court's power; there is no jurisdiction to resolve all disputes among creditors of a bankrupt. There is jurisdiction under

**2.** In other circuits, the test for related to jurisdiction is whether the dispute could have any conceivable effect upon the bankruptcy estate. *See e.g., Pacor v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984); *In re Canion,* 196 F.3d 579, 587 (5th Cir.1999); *In re Dow Corning Corp.,* 86 F.3d 482, 489 (6th Cir.1996); *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 774 (8th Cir.1995); *In re Cuyahoga Equip.*

*Corp.,* 980 F.2d 110, 114 (2nd Cir.1992); *In re Gardner,* 913 F.2d 1515, 1518 (10th Cir.1990); *In re Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir.1990); *In re American Hardwoods, Inc.,* 885 F.2d 621, 623 (9th Cir.1989); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1002 n. 11 (4th Cir.1986). The Seventh Circuit's test requires something more direct, immediate and obvious.

§ 157(c)(1) only when the dispute is "related to" the bankruptcy—meaning that it affects the amount of property available for distribution or the allocation of property among creditors. *Xonics*, 813 F.2d at 131.

That hypothetical is this case. The trustee originally had a dispute with Simon and JAS over the ownership of the FCC licenses, including the licenses Shoaff and Millett claimed liens upon. The outcome of that dispute would affect not only what constituted property of the bankruptcy estate but also (assuming the estate succeeded) whether the estate's property was encumbered by liens. This gave the court jurisdiction to determine not only the issue of ownership, but also the existence of Shoaff and Millett's claimed liens. Yet, once the question of ownership was resolved in favor of Simon and JAS, the only remaining question was whether Shoaff and Millet held liens upon their property and that is not a dispute which will affect either the estate or its creditors.

Shoaff and Millett argue, however, that the dispute over their claimed liens will have an impact upon creditors because the licenses secure the debtor's obligations to them and/or Simon and JAS's guarantee of those obligations. They claim that recognizing and enforcing their liens will reduce the amount of their claims and by doing so increase the distribution to the debtor's other creditors. Thus, they contend, the court's jurisdiction has not ended. The argument is based upon the concluding ruminations in *Xonics* where the court observed that if there were a link between resolving competing claims to abandoned property and the treatment of debtor's other creditors, as where the reduction of one disputant's debt would result in more money for other creditors, the court would continue to have jurisdiction. Having made this observation, the court remanded the case to determine whether there was such an effect. *Xonics*, 813 F.2d at 132.

Creative as Shoaff and Millett's argument is, it overlooks important differences between *Xonics* and this case. To begin with, the warring factions in *Xonics* were both creditors of the debtor; each was owed its own separate debt by the debtor. Here, however, the lien dispute involves only one set of claims—the debt owed to Shoaff and Millet—which has been guaranteed by Simon and JAS and/or is secured by their property—not the claims of competing lienholders with different debts. Secondly, the remaining dispute in *Xonics* was over competing claims to property that belonged to the debtor—its account receivables—which had been abandoned from the estate, whereas the dispute which remains here is over property that belongs to Simon and JAS; all the estate had was the claim that it owned the property, a claim that was resolved against it by the settlement.

The dispute between Shoaff and Millett and Simon and JAS is nothing more than a creditor's attempt to collect the debtor's obligation to it from a guarantor or from property of a third party that may secure the creditor's claim. The reported decisions are divided as to whether the bankruptcy court has jurisdiction over such a proceeding. Decisions from within the Seventh Circuit universally conclude there is none. *See, In re Doctors Hospital of Hyde Park, Inc.*, 308 B.R. 311, 317–18 (Bankr.N.D.Ill.2004); *In re Cary Metal Products, Inc.*, 152 B.R. 927, 934–35 (Bankr.N.D.Ill.1993), aff'd 158 B.R. 459 (D.N.D.Ill.1993), aff'd *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994); *In re Spaulding & Co.*, 131 B.R. 84, 88–89 (N.D.Ill.1990). Outside the Seventh Circuit, there is no unanimity of opinion. Some find jurisdiction lacking. *See, In re Santa Clara County Child Care Consortium*, 223 B.R. 40, 44–49 (1st Cir.

BAP1998); *In re K & R Mining, Inc.*, 135 B.R. 269 (Bankr.N.D.Ohio 1991); *In re Grell*, 83 B.R. 652, 657–58 (Bankr.D.Minn. 1988); *Matter of Tvorik*, 83 B.R. 450, 455–56 (Bankr.W.D.Mich.1988). Others conclude that it exists. *See, Halper v. Halper*, 164 F.3d 830, 838 (3rd Cir.1999); *Hickox v. Leeward Isles Resorts, Ltd.*, 224 B.R. 533, 537–38 (S.D.N.Y.1998); *In re Red Ash Coal & Coke Corp.*, 83 B.R. 399, 402 (W.D.Va.1988); *In re Boco Enterprises, Inc.*, 204 B.R. 407, 411–14 (Bankr.S.D.N.Y. 1997); *Matter of Dak Mfg. Corp.*, 73 B.R. 917, 920–21(Bankr.D.N.J.1987); *In re Showcase Natural Casing Co., Inc.*, 54 B.R. 142 (Bankr.S.D.Ohio 1985). *See also, Hurtubise v. Basil Waste Management, Inc.*, 1994 WL 587733 n. 2 (D.Maine 1994)(assuming jurisdiction but noting that the law is "unsettled."). The diversity of opinion outside the Seventh Circuit makes one thing relatively clear. If it exists at all, bankruptcy jurisdiction over a creditor's efforts to collect its debt from a guarantor or from property of a third party is found only at the outermost reaches of the court's related to jurisdiction. Since that is the case outside the Seventh Circuit where related to jurisdiction is broadly defined, it should be obvious that it lies beyond the Seventh Circuit's narrower definition of the concept.

To better understand why a creditor's efforts to collect from a third party or from property of a third party—as opposed to property of the debtor—do not affect debtor's other creditors, a brief overview of how the Bankruptcy Code treats the claims of guarantors is appropriate. Section 509 of the Bankruptcy Code, deals with the claims of co-debtors—entities that are liable along with the debtor on an obligation, whether as a co-maker or a guarantor, or have pledged their property to secure a debt. Co-debtors are subrogated to the rights of the original creditor to the extent they actually pay the debtor's debt. 11 U.S.C. § 509(a). Nonetheless, any distribution to a co-debtor is subordinated until the original creditor's claim has been paid in full; until that happens, the co-debtor gets nothing from the estate. 11 U.S.C. § 509(c). Because of this, a guarantor's payment of a debtor's obligation to a creditor does not affect the total amount of claims against the estate. Instead, it simply substitutes one creditor, the guarantor, for another, the original claimant. The total debt to be paid by the estate remains the same and, therefore, so does the distribution to the debtor's other creditors.

The co-debtor scenario of § 509 can easily be distinguished from the situation where creditors are seeking to recover their claims from property of the debtor, be it abandoned property, as in *Xonics*, or an insurance policy that is property of the estate, as in *Home Insurance Co. v. Cooper & Cooper Ltd.*, 889 F.2d 746 (7th Cir. 1989) or *Home Insurance Co. v. Adco Oil Co.*, 154 F.3d 739 (7th Cir.1998). In those situations there is no co-debtor and so a recovery will not substitute one creditor for another. Instead, an obligation of the debtor will have been satisfied (either in whole or in part), leaving nothing more to be done. Thus, the total amount of claims to be paid by the estate will have been reduced, resulting in a larger distribution for the other creditors.

When considering related to jurisdiction over controversies to which neither the estate nor the trustee is a party, it is the effect upon *other* creditors that matter. *Xonics*, 813 F.2d at 132. The dispute over whether the Simon and JAS licenses somehow secure Shoaff's and Millet's claims does not involve property of the estate or property of the debtor and will not affect the debtor's other creditors. At best, it will merely determine who as between Shoaff and Millett on the one hand and Simon and JAS on the other will end up holding Shoaff's and Millett's claims. The

amount of those claims will remain unchanged by the litigation—the only change may be the identity of the claims' owner and that will not change the distribution to debtor's other creditors. As a result, the court has no jurisdiction to determine the issue. Jurisdiction ended once it determined the licenses belonged to Simon and JAS.

Based upon the foregoing, the court concludes:

1. It has subject matter jurisdiction over Simon's and JAS's objections to the other defendants' proofs of claim and over the parties' various requests to enforce the Scheumann Agreement. Those issues can be determined by this court.

2. It lacks subject matter jurisdiction over Shoaff and Millett's request to recognize and/or enforce a lien upon or other interest in the Simon and JAS licenses. That claim is hereby DISMISSED.

SO ORDERED.